OTIS D. BREESE et al., Appellants, v. UNITED STATES TELE-GRAPH COMPANY, Respondent.

Although telegraph companies, organized under the general laws of this State and the acts amendatory thereof (chapter 265, Laws of 1848 ; chapter 559, Laws of 1855, etc.), may be termed common carriers in the sense that they are engaged in a public employment and bound to transmit all messages, the common-law liability of common carriers does not attach to them. They do not insure the safe and accurate transmission of messages. They are bound to transmit them with care and diligence adequate to the business which they undertake.

They have the right to make reasonable rules for the conduct of their business, and can limit their liability for mistakes not occasioned by gross negligence or willful misconduct, by notice brought home to the sender of the message or by special contract.

Where the blanks furnished by the company, upon one of which the message was written, had been for some time in the possession of the sender, which blanks contained an agreement between the signer and the company that the company would not be responsible for any error in the transmission of the message, unless it was repeated.

*Held*, it must be presumed that the sender understood the contents of the blank and accepted the terms, and he is estopped from denying or disputing the agreement.

A contract voluntarily signed and executed by a party, in the absence of misrepresentation or fraud, with full opportunity of information as to its contents, cannot be avoided upon the ground of his negligence or omission to read it, or to avail himself of such information.

(Argued May 19th, 1871 ; decided September term, 1871.)

APPEAL from judgment of the General Term of the Supreme Court, in the seventh judicial district, in favor of defendant, rendered in a case agreed upon and submitted for determination without action, under section 372 of the Code of Procedure. The facts and the opinion of the court thereon, are fully reported in 45 Barbour, 274, etc.

The facts material to the decision of this appeal are these: George W. Cuyler, the president of the First Nationa-Bank of Palmyra, acting for and by authority of the plaintiffs, on the 16th of March, 1865, presented to the defendant, a corporation duly incorporated under the general law

of this State providing for the incorporation and regulation of telegraph companies, a dispatch or message for transportation, directed to Cammaan & Co., No. 56 Wall street, New York, to whom it was addressed in the following terms: " Buy us seven ($700) hundred dollars in gold. Geo. W. Cuyler, Pt." It was duly transmitted from the office of the defendant, at Palmyra, but by error of some of its operators working between Palmyra and New York—the precise cause of which is unknown—it was received in New York and sent and delivered to Messrs. Cammaan & Co., as follows : " To Cammaan & Co., No. 56 Wall street, New York. Buy us $7,000 in gold. Geo. W. Cuyler, Pt." They, immediately on its receipt, purchased $7,000 in gold coin at the then market price. After the error was discovered, the defendants were notified of its occurrence and the gold was afterward resold at the best market price, resulting in a loss to the plaintiffs of $1,244.25, on the refusal of the defendants to accept it on a tender ; the plaintiffs having accompanied the tender with a notice that if it was not accepted it would be sold in the public market at the highest price that could be obtained therefor, and the defendants held liable for the loss.

The said dispatch or message was written by Mr. Cuyler upon an ordinary blank of the defendant, taken by him from a lot of blanks he had on hand at his office, which (to secure business) had been left there by the defendants ; but he or the plaintiffs had never read the printed part thereof.

This blank contains, among others, the following provisions : " In order to guard against errors or delays in the transmission or delivery of messages, every message of importance ought to be repeated, by being sent back from the station to which it was directed to the station from which it was sent and compared with the original message. Half the tariff price will be charged for this repeating and comparing. And it is hereby agreed between the signer or signers of this message and this company, that this company shall not be held responsible for errors or delays in the transmission or delivery of this message, if repeated, beyond the amount of fifty dol.

lars, unless a special agreement for insurance be made and paid for at the time of sending the message, and the amount of risk specified in this agreement; and that in case this message is not repeated, this company shall not be held responsible for any error or delay in the transmission or delivery of same beyond the amount paid for transmission, unless specially insured, and the amount of risk paid for and specified in this agreement at the time, nor shall this company be held liable for errors in cipher or obscure messages."

It then contains some other provisions, one of which is that no one but the superintendent is authorized to make a special agreement for insurance, and at the end thereof is the following direction :

" Send the following message, subject to the above conditions and agreement;" and immediately beneath it was the dispatch or message above set forth.

Mr. Cuyler paid for its transmission the fee charged by the defendant, but did not pay for or request to have the same repeated; and the case does not show what the fee paid was.

The plaintiffs claimed, on the above facts, to recover of the defendant the sum of $1,244.25, the amount of their loss, with interest thereon from the 16th day of March, 1865 ; but the court decided against their claim, and rendered judgment for the defendant, with costs.

*Charles McLouth* for appellant. The defendant is a private corporation. (*Dart. Coll.* v. *Woodward*, 4 Wheat., 518–562; *Morey* v. *Newfane*, 8 Barb., 645 ; *Tinsman* v. *Belvidere and D. R. R. Co.*, 2 Dutcher [N. J.], 148; *U. S. Bank* v. *Planters' Bank*, 9 Wheat., 904.) The liabilities of private corporations the same as individuals. (2 Dutch., 148; *West* v. *Brockport*, 16 N. Y., 161; Jones on Bailment, 140; 2 Kent's Com., 780.) Defendant responsible for the competency, accuracy and fidelity of its servants. (41 N. Y., 571, 572; 54 Barb., 519; *Dunning* v. *Roberts*, 35 id., 467.) Defendant liable as common carriers. (2 Kent's Com., 828; *Harcraft* v. *G. N. R. R.*, 8 Eng. L. & E., 362; *Orange Bk.*

v. *Brown*, 3 Wend., 161; *Dow* v. *N. J. Steam Nav. Co.*, 1 Kern., 492, 493; *De Rutte* v. *N. Y. A. and P. Tel. Co.*, 1 Daly, 547; Story on Bailments, § 2; Jones on Bailments, § 137; 2 Kent's Com., 112; 13 Cal., 422; 1 Am. Law Reg., 485; 33 Eng. L. & E., 180; 2 Pars. on Contracts, 251; 35 Penn., 298; 32 Barb., 530; *Watz* v. *W. U. Tel. Co.*, 62 Pa., 83; 54 Barb., 125, 136.) The company cannot limit its liability in case of negligence. (*Wells* v. *Steam Nav. Co.*, 8 N. Y., 379; *Prentice* v. *Decker*, 49 Barb., 21–31; *Steam Nav. Co.* v. *Merchants' Bank*, 6 How. U. S., 344–382; *Birney* v. *N. Y. and Wash. Tel. Co.*, 18 Md., 341; *Guiliame* v. *Ham. and Am. Packet Co.*, 42 N. Y., 212; *Smith* v. *N. Y. C. R. R.*, 24 id., 225; Angell on Com. Carr., §§ 267–275; Scott & J., Tel. Law, §§ 140–260; *Wolf* v. *W. U. Tel. Co.*, 62 Pa., 83.) Except by express contract, it cannot be limited at all. (*Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 445; *Dow* v. *Steam Nav. Co.*, 11 id., 485; *Baldwin* v. *U. S. Tel. Co.*, 1 Lansing, 136.) Public policy precludes defendant from limiting its liability as attempted. (*Merrill* v. *Earle*, 29 N. Y., 215; *Coggs* v. *Bernard*, 2 Ld. Ray., 909; *Bryant* v. *Am. Tel. Co.*, 1 Daly, 575; *Birney* v. *N. Y. and W. Tel. Co.*, 18 Md., 341.) The signing the paper did not make an express contract. (*Weller* v. *N. Y. C. R.*, 24 N. Y., 183; Story on Con., § 378; *Wolf* v. *W. U. Tel. Co.*, 62 Pa., 83.) The error is negligence. (*Rittenhouse* v. *Ind. Tel. Co.*, Com. of Appeals, 1871.) The burden was upon defendant to show mistake happened without negligence. (*Leonard* v. *N. Y. Tel. Co.*, 41 N. Y., 565.) As to rule of damages, see *Rittenhouse* v. *Ind. Tel. Co.*, Com. of App., 1871; *Leonard* v. *N. Y. Tel. Co.*, 41 N. Y., 544; *Baldwin* v. *U. S. Tel. Co.*, 1 Lansing, 125; *Hobson* v. *Wash. Tel. Co.*, 15 Grattan [Va.], 122; *Parks* v. *Cal. Tel. Co.*, 13 Cal., 442; *Stevenson* v. *Montreal Tel. Co.*, 16 W. Canada, 530; *Griffin* v. *Colver*, 16 N. Y., 494; Sedg. on Damages, chap. 3.)

*G. P. Lowery* for respondent. Even if defendant is liable as a common carrier, it is not liable here. (*Clarke* v. *R. & S.*

*R. R. Co.*, 4 Kern., 572; *Boyce* v. *Anderson*, 2 Pet. S. C., 150.) The blank used constituted a binding agreement. (*Lewis* v. *G. W. R. Co.*, 5 H. & M., 865; *Wolf* v. *Western Union Tel. Co.*, 62 Pa. Rep., 87; *Western Union Tel. Co.* v. *Carew*, 16 Mich., 525, 536; *Ellis* v. *American Tel. Co.*, 13 Allen, 226, 235, 1866; *Wann* v. *Western Union Tel. Co.*, 37 Mo., 480, 1866; *Sweatland* v. *Ill. & Miss. Tel. Co.*, 27 Iowa, 433, 1869; *Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 442.) The blank is valid as a regulation, if not as an agreement. (Laws of 1848, ch. 265, § 11; *McAndrews* v. *The Electric Tel. Co.*, 33 Eng. L. and Eq. R., 180; *Birney* v. *N. Y. and Wash. Tel. Co.*, 18 Maryland, 357; *Camp* v. *Western Union Tel. Co.*, 1 Metcalfe [Ky.] R., 164; *Ellis* v. *American Tel. Co.*, 13 Allen, 226, 235, 236, 1866; *Western Union Tel. Co.* v. *Carew*, 16 Mich., 536; *Gildersleeve* v. *U. S. Tel. Co.*, 29 Maryland, 232, 1868.) Defendant only liable for negligence or want of skill, which must be shown affirmatively. (*Leonard* v. *N. Y. & B. Tel. Co.*, 41 N. Y., 571, Hunt, J., and p. 576, Woodruff, J.; *Ellis* v. *American Tel. Co.*, 13 Allen, 232; *Western Union Tel. Co.* v. *Carew*, 16 Mich., 536; *Birney* v. *N. Y. and Wash. Tel. Co.*, 18 Md., 357; 2 Parsons on Cont., 5 ed., p. 133; *Platt* v. *Hibbard*, 7 Cow., 501; *N. J. Steam Nav. Co.* v. *Mer. Bank*, 4 How. U. S., 384; *Sweatland* v. *Ill. & Miss. Tel. Co.*, 27 Iowa, 433.)

Lott, Ch. C. · The questions involved on this appeal do not, as stated by the appellants' counsel, "take a wide range," but are, by the facts detailed in the case, reduced to a narrow compass. It is therein stated that the defendants are a corporation duly incorporated under the laws of the State of New York, and engaged in the business of transmitting messages and dispatches by electric telegraph, for hire, over a line of telegraphic wires owned by them, at their office in Palmyra in this State; that they received and duly transmitted a dispatch or message, for and on behalf of the plaintiffs, to Cammaan & Co., of the city of New York, directing the purchase of "seven hundred ($700) dollars in gold;" but, as the

case states, by error of some of defendants' operators working between Palmyra and New York—the precise cause of which is unknown—it was received in New York, and sent and delivered to that firm, containing an order to buy " seven thousand dollars in gold." This dispatch or message was written by the plaintiffs' agent upon an ordinary blank of the defendants, containing certain provisions intended to limit their liability, particularly set forth in the statement of the case, and the principal question arises on the legal effect of those provisions.

It does not appear that the incorporation of the defendants is under a special act, and I shall assume, as the appellants' counsel states in his second point, that they are a corporation created under the general law (chap. 265 of the Laws of 1848) providing for the incorporation and regulation of telegraph companies, and the acts amendatory thereof. That act provides that any number of persons may associate for the purpose of constructing a line of wires of telegraph through this State, or from or to any point within this State, upon such terms and conditions and subject to the liabilities prescribed by the act ; and it authorizes any association or corporation formed under it, to "make such prudential rules, regulations and by-laws as may be necessary in the transaction of their business, not inconsistent with the laws of this State or of the United States." (§ 4.) And it is declared by section 11, as amended by chapter 559 of the Laws of 1855, that " it shall be the duty of the owner or the association, owning any telegraph line doing business within this State, to receive dispatches from and for other telegraph lines and associations, and from and for any individual, and, on payment of their usual charges for individuals for transmitting dispatches as established by the rules and regulations of such telegraph line, to transmit the same with impartiality and good faith, under the penalty of $100 for every neglect or refusal so to do, to be recovered with costs of suit in the name of the person or persons sending, or desiring to send, such dispatch ;" and the twelfth section declares it to be the

further duty of every such owner or association to transmit all dispatches in the order in which they are received, under the like penalty of $100, to be recovered with costs of suit by the person or persons whose dispatch is postponed out of its order as therein prescribed. There are provisions in both of these sections having no application to this case, and therefore unnecessary to be set forth. No other specific duty is imposed by the act on the associations organized under it than those prescribed and declared by the said eleventh and twelfth sections. They relate to their receipt and transmission of dispatches " on payment of their usual charges for individuals," and their right and power to fix those at such rates as they may deem proper, with a prohibition to demand more from other telegraph lines and associations than from individuals. There is no limitation or restriction on their power to make such prudential rules, regulations and by-laws as they may deem necessary in the transaction of their business, except only that they shall not be inconsistent with the laws of this State or of the United States.

Under that general power, the defendants were authorized to prescribe such regulations as they deemed necessary to guard against errors or delays in the transmission or delivery of messages, and to declare that a party who failed to comply therewith should assume all risks and losses resulting from such errors or delays.

In the exercise of that power, they, in their ordinary blanks on which the dispatches sent by them are written, after stating that, " in order to guard against errors or delays in the transmission or delivery of messages, every message of importance ought to be repeated by being sent back from the station to which it is directed to the station from which it is sent, and compared with the original message," and that " half the tariff price will be charged for thus repeating and comparing," have inserted an agreement between the signer or signers of the message and the company, that the company shall not be responsible in case it is not so repeated for any such error or delay beyond the

amount paid for transmission, unless specially insured and the amount of risk paid for and specified in the agreement at the time, which is followed by a direction or order immediately preceding the message to be sent, in the following terms : " send the following message subject to the above conditions and agreement." The conditions are reasonable, and not against public policy ; on the contrary, they subserve to carry out the objects for which telegraphic associations are created, and especially to secure the receipt of a message in the words in which it is written and delivered for transmission. A party using such a blank and writing his dispatch thereon, assents to the terms and conditions on which it is to be sent. If he omits to read or to become informed of them, it is his own fault. A contract voluntarily signed and executed by a party, in the absence of misrepresentation or fraud, with full opportunity of information as to its contents, cannot be avoided on the ground of his negligence or omission to read it, or to avail himself of such information.

In this case there is no pretense of misrepresentation or fraud. It appears that the agent of the plaintiffs was the president of a bank at Palmyra, and that, as is stated in the case, " he had on hand at his office, which (to secure business) had been left there by the defendants, a lot of blanks like the one on which this message was written, and took the blank from among them to write this dispatch upon." After it was so written it was taken by him to the office of the defendants and presented to them for transmission to New York. Under this state of facts, the plaintiffs cannot be released from the legal obligation or effect of the contents of the instrument when perfected by the writing of the dispatch thereon, upon the admission in the case that " he or the plaintiffs had never read the printed part of it." The defendants had a right, from the agent's presentation of it, to assume and act on the assumption that he was fully informed of the provisions of the paper he had signed.

It is stated as a fact in the case, that the agent paid for the transmission of the message, but did not pay for or

request to have the same repeated; but what was paid does not appear, and there was no insurance.

It follows, from the views above expressed, that the plaintiffs are precluded by the express terms of their agreement from recovering the amount claimed by them. It therefore becomes unnecessary to express any opinion on the question affecting the general power, duties and liability of the defendants, discussed with great care and ability by the learned counsel of the parties, or as to the validity of any of the other conditions or provisions, contained in the blank, but not applicable to this case.

It may be proper, however, to notice the point of the appellants' counsel, that the defendants cannot limit their liability in case of negligence; and in regard to it, I deem it sufficient to say that it does not appear as a fact in the case, nor is it, on what is stated, a conclusion of law, that the defendants or their agent were chargeable with negligence.

The statement in reference to it is that the message was duly transmitted from the office at Palmyra, "but by error of some of the defendant's operators, working between Palmyra and New York, the precise cause of which is unknown, it was received in New York" different from its original direction. The parties, by this admission, acknowledge and declare that the cause of the error is unknown; the court therefore cannot, in the face of this acknowledgment and declaration, say that it was attributable to negligence.

It follows, from the views above expressed, that the judgment appealed from must be affirmed with costs.

EARL, C. It is not very important to determine whether telegraph companies are common carriers or not, because I find no decision, entitled to any weight as authority, which holds that the common-law liability of common carriers attaches to them. They may in one sense be called common carriers, as they are engaged in a public employment, and are bound to transmit, for all persons, messages delivered to them for that purpose. (Sherman & Redfield on Neg.,

606.)   But if we call them common carriers in this sense, it does not follow that they become insurers, like the common carriers of goods.   (Sherman & Redfield on Neg., 608; Redfield on Car., 408.)

The liability of telegraph companies is regulated by contract and the nature of their public employment.   In the absence of any special contract limiting or regulating their liability, they do not insure the safe and accurate transmission of messages, but they are bound to transmit them with care and diligence adequate to the business which they undertake, and if they fail in such care and diligence, they become responsible.   But while they are bound to transmit all messages delivered to them, they have the right to make reasonable rules and regulations for the conduct of their business.   They can thus limit their liability for mistake, not occasioned by gross negligence or willful misconduct, and this they can do by notice brought home to the sender of the message, or by special contract entered into with him. (Redfield on Carriers, 405; *McAndrew* v. *Electric Telegraph Co.*, 33 Eng. L. & Eq., 180; *Birney* v. *New York & Washington Tel. Co.*, 18 Md., 341; *N. Y. & Washington Printing Tel. Co.* v. *Dryburg*, 35 Penn., 298; *Ellis* v. *American Tel. Co.*, 13 Allen, 226; *Western Union Tel. Co.* v. *Carew*, 15 Mich., 525; *Wannan* v. *Western Union Tel. Co.*, 37 Mo., 472; *Camp* v. *West. Union Tel. Co.*, 1 Metcalfe [Ky.] 164.)

Here Cuyler wrote the message upon a blank, which had been furnished by the company, specifying that the company would not be held responsible for any error in the transmission of the message, unless it was repeated.   He had had the blanks in his possession for some time, and had had abundant opportunity to read them.   The blanks contained the terms upon which the company solicited and would accept his business, and when the message was written upon one of them and brought to the office of the company, its agent had the right to assume and believe that he accepted the terms, and assented to and understood the agreement.   In the absence

of any proof that the blanks were printed in such small type, or otherwise, as to mislead, or that Cuyler was so illiterate that he could not read, he must be presumed to have understood the contents of the blank, and upon the ordinary principle applicable to the doctrine of *estoppel in pais,* he must be held estopped from denying or disputing the agreement. (*Lewis* v. *Great Western Railway Co.,* 5 Hurlstone & N., 867; *Grace* v. *Adams,* 100 Mass., 505; *Wolf* v. *Western Union Tel. Co.,* 62 Pa., 87.) This would not be so if the blank had been delivered to Cuyler at the time he wrote the message upon it, and he had no opportunity to read it, and to the knowledge of the telegraph operator had not read it. In such case there would have been no room for the application of the doctrine of estoppel, and no reason for indulging in presumptions.

We should reach the same conclusion if we held that defendant was a common carrier, with all the liabilities which attach to such carriers at common law; for it is well settled in this State that common carriers can contract for exemption from their common-law responsibility, as to everything, certainly, except their gross negligence or willful misconduct. (*Bissell* v. *N. Y. Cent. R. R.,* 25 N. Y., 442; *French* v. *Buffalo, N. Y. and Erie R. R. Co.,* 4 Keyes, 111.)

I am, therefore, of the opinion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.