## LAWRENCE GRINNELL vs. WESTERN UNION TELEGRAPH COMPANY.

A printed heading upon a telegraph blank, limiting the liability of the telegraph company for mistakes in the transmission of unrepeated messages to the amount received for sending the message, constitutes, when underwritten with a signed dispatch, a contract between the company and the dispatch sender, although it has never been read by him ; and, unless, perhaps, in case of wilful default or of gross negligence on the company's part, limits its liability to the specified amount, even though the mistake is of a kind not to be prevented by the repetition of the message.

In an action against a telegraph company for a mistake in sending a message, evidence of a usage in a local office of the company is inadmissible to vary the terms of the contract under which the message is sent.

In an action against a telegraph company for negligence in the transmission of a message, evidence is inadmissible against the company that because of the alleged negligence one of its officers made a deduction from the pay of one of its operators.

ACTION with counts in contract and counts in tort, joined, for the same cause of action. The first were for a breach of contract, the second for negligence in transmitting, from New Bedford to Boston, the following message: "New Bedford, April 15, 1871. To Samuel Gould, Pres. of the Manufacturers' Ins. Co., Boston. Please continue the Cordage Company policy at the old rate until I see you Monday. Answer. Lawrence Grinnell." It was alleged that the word "Answer" was omitted from the message as delivered, and that the plaintiff, not being advised of the assent of the insurance company, procured further insurance of another insurance company, paying therefor $35 in addition to $35 he was obliged to pay to the Manufacturers' Company, which sum of $35 was alleged to be the damage sustained by him from the defendant's breach of contract and from its negligence.

At the trial in the Superior Court, before *Bacon*, J., it was agreed that the plaintiff delivered the message, written on a blank furnished by the defendant, to the defendant's agent at New Bedford, Saturday, April 15, 1871 ; that it, without the word "Answer," was delivered to the insurance company, who accordingly made the insurance requested. No answer was received by the plaintiff that day, and he effected other insurance on the property that evening, for which he paid $33. The message was written under a printed heading upon the blank as

follows : " All messages taken by this company subject to the following terms : To guard against mistakes, the sender of a message should order it REPEATED ; that is, telegraphed back to the originating office. For repeating, one half the regular rate is charged in addition. And it is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED message, beyond the amount received for sending the same ; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any RE-PEATED message beyond fifty times the sum received for sending the same, unless specially insured ; nor in any case for delays arising from unavoidable interruption in the working of their lines, or for errors in cipher or obscure messages. And this company is hereby made the agents of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.

" Correctness in the transmission of messages to any point on the lines of this company, can be INSURED by contract in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz.: one per cent. for any distance not exceeding 1000 miles, and two per cent. for any greater distance. No employee of the company is authorized to vary the foregoing.

" The company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message."

" Send the following message subject to the above terms, which are agreed to."

The message was not repeated, and the plaintiff did not request that it should be, or make any payment or tender for repeating it, or give any further information to the defendant in regard to it. It was not answered. The plaintiff paid the insurance in Boston, $33, and made a claim for the $33 on the defendant within sixty days.

The plaintiff offered to show, the defendant objecting, that the defendants' local superintendent at Boston wrote to their agent

at New Bedford that the claim must be paid, and assessed on the sending and the receiving operators ; that the latter paid nothing, but that $16.50 was deducted from the salary of the former, although the superior officers of the defendant company declined to recognize or pay the claim, and that by their order the $16.50 was refunded to the operator after the plaintiff's claim was made, and before this action was brought.

He also offered to prove that the repeating back the message, as it was received by the receiving operator in Boston, would not have disclosed the omission of the word "Answer," and that there was negligence on the part of the New Bedford operator in not sending the word " Answer " to Boston.

He further offered to prove that, according to the usage of the New Bedford office, the word " Answer " should have been sent, and that it was placed on the original message, with the understanding at the time that it was to be sent.

He further offered to show that the terms established by the company, which are printed in very small type, were never read by him, or made known to him, and that they were not published except by being printed upon the blanks kept for use in the office of the company.

The court ruled that the action could not be maintained for more than twenty-five cents, the charge for sending the message, and by consent of the parties before verdict, reported the case to this court for the determination of the question whether, upon the pleadings and the facts admitted and offered to be shown by the plaintiff, he was entitled to recover more than the twenty-five cents paid by him for sending the message to Boston. If the court should determine this question in favor of the plaintiff, the case was to stand for trial ; otherwise, judgment was to be entered for the plaintiff for twenty-five cents.

*G. Marston,* for the plaintiff.

*G. S. Hale,* for the defendant.

GRAY, C. J. The liability of a telegraph company is quite unlike that of a common carrier. A common carrier has the exclusive possession and control of the goods to be carried, with peculiar opportunities for embezzlement or collusion with thieves :

the identity of the goods received with those delivered cannot be mistaken ; their value is capable of easy estimate, and may be ascertained by inquiry of the consignor, and the carrier's compensation fixed accordingly ; and his liability in damages is measured by the value of the goods. A telegraph company is intrusted with nothing but an order or message, which is not to be carried in the form in which it is received, but is to be transmitted or repeated by electricity, and is peculiarly liable to mistake ; which cannot be the subject of embezzlement; which is of no intrinsic value ; the importance of which cannot be estimated except by the sender, nor ordinarily disclosed by him without danger of defeating his own purposes ; which may be wholly valueless, if not forwarded immediately ; for the transmission of which there must be a simple rate of compensation ; and the measure of damages for a failure to transmit or deliver which, has no relation to any value which can be put on the message itself.

The duty of a telegraph company, as defined in our statutes, is that it " shall receive dispatches from and for other telegraph lines, companies and associations, and from and for any person ; and on payment of the usual charges for transmitting dispatches, according to the regulations of the company, shall transmit the same faithfully and impartially." Gen. Sts. *c.* 64, § 10.

The liability of a telegraph company may be limited by reasonable stipulations expressed in its contracts with the senders of messages ; and, according to the weight of authority, a regulation that the liability of the company for any mistake or delay in the transmission or delivery of a message, or for not delivering the same, shall not extend beyond the sum received for sending it, unless the sender orders the message to be repeated by sending it back to the office which first received it, and pays half the regular rate additional, is a reasonable precaution to be taken by the company, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated, for any cause except wilful misconduct or gross negligence on the part of the company. *Ellis* v. *American Telegraph Co.* 13 Allen, 226. *Redpath* v. *Western Union Telegraph Co.* 112 Mass. 71. *Camp* v. *Western Union Telegraph Co.* 1 Met. (Ky.) 164. *Western*

*Union Telegraph Co.* ▾. *Carew*, 15 Mich. 525. *United States Telegraph Co.* v. *Gildersleve*, 29 Maryland, 232. *Breese* v. *United States Telegraph Co.* 48 N. Y. 132.

Such a regulation does not undertake wholly to exempt the company from liability for loss; but merely requires the other party to the contract, if he considers the transmission and delivery of the message to be of such importance to him that he proposes to hold the company responsible in damages, for a non-fulfilment of the contract on its part, beyond the amount paid for the message, to increase that payment by one half. Even a common carrier has a right to inquire as to the quality and value of goods or packages intrusted to him for carriage, and is not liable for goods of unusual value, if false answers are made to his inquiries. *Phillips* v. *Earle*, 8 Pick. 182. *Dunlap* v. *International Steamboat Co.* 98 Mass. 371, 377, 378.

In the leading case in this Commonwealth of *Ellis* v. *American Telegraph Co.*, the action was brought for an error in transmitting a message, by substituting the words " seventy-five " for " twenty-five ; " and there was no evidence of carelessness or negligence, except this error, which was made by some agent of the company in transmission. The defendants requested the judge who presided at the trial to instruct the jury that on these facts they were not liable. But the judge ruled that, notwithstanding the terms and conditions set forth in the printed heading of the message, (which were substantially like those in the case at bar,) the defendants were bound, in transmitting the message, to make use of ordinary care, attention and skill, and were liable for damages arising from inattention or carelessness in such transmission, and not produced by any unexpected or unforeseen accident; and that the difference between the message received and that actually delivered was *primâ facie* evidence of the want of ordinary care, attention and skill on the part of the defendants. 13 Allen, 226–228.

Upon exceptions to that ruling, the court held that, in the business of transmitting messages by telegraph, as in the ordinary employments and occupations of life, men were bound to the use of due and reasonable care, and were liable for the consequences

of their negligence in the conduct of their business to those sustaining loss or damage thereby ; but that this rule did " not operate so as to prevent parties from prescribing reasonable rules and regulations for the management of the business, or establishing special stipulations for the performance of service, which, if made known to those with whom they deal, and directly or by implication assented to by them, will operate to abridge their general liability at common law, and to protect them from being held responsible for unusual or peculiar hazards which are incident to particular kinds of business." It was further said : " Of course, a party cannot in such way protect himself against the consequences of his own fraud or gross negligence, or the fraud or gross negligence of his servants or agents." " But he may to a certain extent, in the mode above indicated, limit the extent of his liability, or graduate the amount of his compensation, according to the risk which he assumes, as well as by the nature of the service which he renders." 13 Allen, 234. It was held that the regulation in question was reasonable and valid ; that " the defendants were entitled to insist on a compliance with that part of their regulations which required that the message should be repeated, and that the extent of the risk should be made known to them, if they were to be held to insure the safe and correct transmission of the message, or, in case of failure, to be responsible for all the damages consequent on delays or errors." And the court declared that it was mainly for these reasons that the instructions to the jury could not be supported. 13 Allen, 235–237.

Although that action was by the receiver of the message, he was treated throughout the case as claiming through the contract, of which he had notice, made with the company by the sender of the message. No allusion was made in the judgment of this court to the nature of the error in the message, or to its effect as evidence of negligence on the part of the company. Nor was it suggested that there was any insufficiency in the proof of negligence ; and there was nothing before this court upon which such a point could have been decided ; for the question whether the substitution of " seventy " for " twenty " was or was not of itself proof of negligence, depended upon the plainness of the writing

of the original message, which could only be ascertained by inspection, and which was a pure question of fact to be determined by the jury or the court below.

As the instructions at the trial of that case did not allow the plaintiff to recover without proof of negligence to the satisfaction of the jury, the judgment of this court, sustaining the exceptions to those instructions, is a direct adjudication that the regulations in question exempted the company from liability for ordinary negligence where the message had not been repeated and the additional charge paid.

We have been led to make the fuller statement of that case, because its scope and effect appear to us to have been misapprehended in *Sweatland* v. *Illinois & Mississippi Telegraph Co.* 27 Iowa, 433, which is the only decision, cited at the bar, inconsistent with the law upon the subject as declared by this court.

In *Western Union Telegraph Co.* v. *Buchanan,* 35 Ind. 429, the action was not for damages, but for a penalty imposed by statute, which could not of course be restricted by the contract of the parties; and it was assumed that in the case of a message not repeated in accordance with the rule, the company would not be liable for damages beyond the amount stipulated, except in case of gross negligence. In *True* v. *International Telegraph Co.* 60 Maine, 9, the regulation which was held invalid purported wholly to exempt the company, in case of messages sent by night, from any liability beyond the amount received; and the opinion of the majority of the court appears to be founded on a false analogy between telegraph companies and common carriers, and is opposed by a very able dissenting opinion of Chief Justice Appleton. In *Squire* v. *Western Union Telegraph Co.* 98 Mass. 232, and in *Leonard* v. *New York, Albany & Buffalo Telegraph Co.* 41 N. Y. 544, there was no regulation limiting the liability of the corporation against which the action was brought. In *New York & Washington Telegraph Co.* v. *Dryburg,* 35 Penn. St. 298, the action was by the receiver of a message, who had no notice of the regulation; and was in substance not founded upon contract, but upon a misrepresentation by the company employed to send the message, by which the receiver was misled and im-

jured.   See *Ellis* v. *American Telegraph Co.* 13 Allen, 226, 238 *May* v. *Western Union Telegraph Co.* 112 Mass. 90, 95.

In the case at bar, the form of the dispatch, delivered by the defendant's agent to the plaintiff, and filled up and signed by the latter, constituted the contract between the parties.   The plaintiff, having thus expressly agreed that, if he did not order the message to be repeated, the liability of the defendant for mistakes or delays in its transmission or delivery should be limited to the sum paid, and not having ordered it to be repeated and paid the increased rate required in case of repetition, could not charge the defendant for liability, beyond the amount originally paid for the transmission of the message, for a mistake in the transmission, at least without proving wilful default or gross negligence on the part of the company.

There was no offer at the trial to show any wanton disregard of duty or gross negligence on the part of the company or its agents.   The offer to prove that " there was negligence on the part of the operator," in not sending the whole message received, must be understood to mean want of ordinary care.   No question therefore arises whether the company could be charged by reason of gross negligence, as held in *United States Telegraph Co.* v. *Gildersleve*, 29 Maryland, 232, and suggested in *Ellis* v. *American Telegraph Co.* 13 Allen, 226, 234.

The offer of the plaintiff to prove that the repeating of the message, as received by the operator of the telegraph at Boston, to the operator at New Bedford by whom it was sent, would not have disclosed the omission in the message, was rightly rejected as immaterial.   The report does not show how such evidence could possibly have proved that fact.   But the conclusive answer to it is that the plaintiff, having omitted to fulfil the condition, on which alone, by the terms of the express contract between the parties, he could recover for any mistake in transmission more than the amount of his original payment, cannot be permitted to prove that his own failure to fulfil his contract did not affect the result.   The *obiter dicta* of Chief Justice Bigelow in *Ellis* v. *American Telegraph Co.* 13 Allen, 226, 238 — that it would be a question of fact for the jury whether the mistake in the dispatch

would have been prevented or corrected by the repetition of the message; and that of course the company would be liable for any negligence causing damage, which would not have been prevented by a compliance with the rules — are somewhat wanting in precision, owing doubtless to the fact that, as he observed, no such question was before the court. They might perhaps apply where the neglect sued for was in a matter not within the terms of the regulation, as, for instance, where no attempt at all was made to send the message. *Birney* v. *New York & Washington Telegraph Co.* 18 Maryland, 341. But that they were not intended to countenance the admission of such evidence as was offered in the present case, upon any point covered by the contract of the parties, is manifest from his statement, only a few lines above, that it might be a sufficient answer to the claim against the company, " that according to the reasonable regulations by which they were governed in the performance of their undertaking towards the plaintiff, and of which he had notice, they have committed no breach of duty for which they can be held liable to him."

The remaining questions may be briefly disposed of. The evidence of usage and understanding was clearly incompetent to vary the terms or effect of the written contract between the parties. The plaintiff's omission to read that contract cannot relieve him from being bound by his signature. *Redpath* v. *Western Union Telegraph Co.* 112 Mass. 71, 73. *Western Union Telegraph Co.* v. *Carew*, 15 Mich. 525. *Wolf* v. *Western Union Telegraph Co.* 62 Penn. St. 83. *Breese* v. *United States Telegraph Co.* 48 N. Y. 132. The subsequent acts and declarations of the defendant's agents, not connected with the transmission of the message, were not competent evidence to charge the defendants. *MacAndrew* v. *Electric Telegraph Co.* 17 C. B. 3. *United States Telegraph Co.* v. *Gildersleve*, 29 Maryland, 232. *Sweatland* v. *Illinois & Mississippi Telegraph Co.* 27 Iowa, 433. *Robinson* v. *Fitchburg & Worcester Railroad Co.* 7 Gray, 92.

The result is that according to the ruling at the trial and the terms of the report there must be

*Judgment for the plaintiff for* 25 *cents.*