Boynton, C. J.
As we have reached the .conclusion that the court below did not err in denying the motion for a new trial founded on the alleged insufficiency of the evidence to sustain the verdict, and as a review of the evidence would serve no useful purpose, it only remains to consider whether the court erred in the instructions given to the jury. The first question arises on the exception to that portion of the charge by which the jury were told that the special agreement under which the message was sent did not relieve the company from liability for the damages resulting from the inaccurate transmission of the message, if the mistake or error occurred through the negligence of the company or its agents. There seems to be a want of harmony in the decided cases on the point of the correctness of this instruction, and this no doubt arises, in some measure at least, from the different views taken of the natm’e of the employment in which telegraph companies are engaged, and to some extent from.different views taken of their rights and liabilities by courts who fully agree upon the nature of such employment, but differ as to the extent of the duties and obligations that spring therefrom. In Parks v. Alta California Tel. Co., 13 Cal. 422, the obligations of telegraph companies were held to be the same as those of common carriers, and consequently that they were, in effect, insurers of the safe transmission of a message, unless the transmission was 'interfered with by the act of God or the public enemies. An *310 early case in England held the same doctrine. McAndrew v. Electric Tel. Co., 33 Eng. L. & Eq. 180. But the weight of authority both English and American is clearly the other way. Ellis v. American Tel. Co., 63 Allen, 226 ; Leonard v. New York, &c. Tel. Co., 41 N. Y. 544; Breese v. United States Tel. Co., 48 N. Y. 132; New York, &c. Tel. Co. v. Dryburg, 35 Penn. St. 298 ; Bartlett v. Western Union Tel. Co., 62 Me. 209 ; Birney v. New York, &c. Tel. Co., 18 Md. 341; Grinnell v. Western Union Tel. Co., 113 Mass. 299.
But that telegraph companies exercise a quasi public employment with duties and obligations analogous to those of a common carrier, is a proposition clearly settled. The statute confers upon them power of eminent domain, which no one will contend could be conferred upon, them, consistently with the constitution, if they were engaged in a mere private employment or occupation by which the public interests were not affected.
They are required to receive dispatches from individuals or corporations, including other telegraph companies, and to transmit and deliver the same faithfully and impartially in the order received, except in a few specified cases, where from public considerations certain preferences may be made. S. & S. 155. These provisions, as well as the nature of the employment itself, are entirely inconsistent with the theory that the business' of conducting aline of telegraph is a mere private employment as distinguished from one carried on for the benefit of the public at large. Granting this, it is, however, contended that because the company is not an insurer of the safe transmission of a message, and is authorized to make or adopt such regulations and by-laws for the management of the business as it may deem proper (l S. & S. 298, § 46), it cannot be made liable to the plaintiff below, beyond the amount paid for sending the message, in the face of the stipulation against liability for any error in an Unrepeated message, notwithstanding such error resulted from the negligence of the company’s agents by whom the message was sent over its wires. To this proposition we do not agree. It has long been the settled law of this State, that a common carrier cannot, either by special agreement with,’ *311 or by notice brought home to the shipper, relieve himself from liability for the consequences of his negligence. Davidson v. Graham, 2 Ohio St. 131; Railroad Company v. Curran, 19 Ohio St. 1.
In Graham v. Davis, 4 Ohio St. 377,—a case involving the liability of a common carrier who claimed exemption therefrom by reason of a special contract with the shipper,—it was said that “ one of the strongest motives for the faithful perform anee of a public duty, is found in the pecuniary responsibility which the carrier incurs for its failure. It induces him to furnishsafe and suitable equipments, and to employ careful and competent agents. A contract, therefore, with one to relieve him from any part of this responsibility reaches beyond the person with whom he contracts, and affects all who place their persons or property in his custody. It is immoral because it diminishes the motive for the performance of a high moral duty; and it is against public policy, because it takes from the public a part of the security they would otherwise have.”
These considerations,—there referred to common carriers,— apply with equal force to those who furnish the means of telegraphic communication to the public. Their employment is not only public in its nature, but it has become a necessity alike to the social and commercial world.
Hence, it is as true of them, as of common carriers, that any stipulation, or regulation that authorizes or enables them to secure exemption from liability for negligence, in the transmission or delivery of the message, reaches far beyond the person with whom they are dealing, and for whom the immediate service is being performed, and affects the entire public. The cases which' hold that a common carrier may stipulate for immunity from liability for mere negligence, all agree that they are liable for “gi’oss negligence.” But just what this term means is not easily ascertained. There is authority for holding it to be equivalent to fraud or intentional wrong. Jones on Bailm. 8-46 et sep But a majority of the cases would seem to hold it to be a failure to exercise ordinary care. In Wilson v. Brett, 11 Mees. & W. 113, it was said by Baron Rolfe, that he could “ see no difference between gross negligence and negligence ; *312 that it was the same thing with a vituperative epithet.” In Hinton v. Dibbin, 2 Ad. & El. (N. S.) 644, Lord Denman remarked, that “ when we find gross negligence made the criterion to determine the liability of a common carrier who has given the usual notice, it might perhaps have been reasonably expected that something like a definite meaning should have been given to the expression. It is believed, however, that in none of the numerous eases upon this subject is any such attempt made, and it may well be doubted whether between gross negligence and negligence merely, any intelligible distinction exists.” See also Beal v. South Devon By. Co., 3 II. & 0. 337; Austin v. Manchester By. Co., 11 Eng. L. & Eq. 513; and comments of Parke, B., in Wyld v. Pickford, 8 M. & W. M3. In Duffy. Budd, 3 Brod. ■& Bing. 177, it was held by Dallas, Ch. J., that “gross negligence is where the defendant or his servants have not taken the same care of the property as a> prudent man would take of his own.” And by Best, J., in Batson v. Denovan, 4 Barn. & Aid. 21, that “ they must take as much care of it as a prudent man does of his own property.”
In Grill v. General Iron Screw Collier Company., L. R. 1 C. P. 600, gross negligence was held to be a relative term and meant “ the absence of the care that was requisite under the circumstances.” It was the absence of such care as it was the duty of the defendant to use in the circumstances of the case.
In Beal v. South Devon Ry. Co., supra, it was held in the case of a carrier that “ gross negligence includes the want of that reasonable care, skill, and expedition which may properly be expected of him,” Crompton, J., remarking, that “ for all practical purposes, the rule may be stated to be that failure to exercise reasonable care, skill and diligence, is gross negligence.” To the same effect is Briggs v. Taylor, 28 Vt. 181, and Shearm. & Redf. on Neg. § 16; all substantially agreeing with Willes, J., in Lord v. Midland Railway Co., L. R. 3 C. P. 344, that “ any negligence is gross in one who undertakes a duty and fails to perform it.” See, also, Griffith v. Zipperwick, 28 Ohio St. 388 ; and Pennsylvania Co. v. Miller, 35 Ohio St. 549.
These authorities show a strong tendency in the adjudica *313 tions to break down the impracticable distinction between what is termed gross negligence, and ordinary negligence, which some of the cases hold to exist. The rule, however, in this state is well settled, that one exercising a public employment is liable for failing to bring to the service he undertakes, that degree of skill and care, which a careful and prudent man would, under the circumstances, employ ; and that any stipulation or regulation by which he undertakes to relieve himself from the duty to exercise such skill and care in the performance of the service, is contrary to public policy, and consequently illegal and void. In our opinion telegraph companies fall within the operation of this rule ; and that in failing to exercise such care and skill in the transmission and delivery of messages, they become liable for the resulting consequences, notwithstanding their stipulation to the contrary. The right to make rules and regulations to govern the management of their business is expressly conferred by statute. But such rules must be reasonable, and if they fail to accord with the demands of a sound public policy they are void. Railroad Co. v. Lockwood, 17 Wall. 357 ; 21 Wall. 267.
We are also of the opinion that the failure to transmit and deliver the message in the form or language in which it was received, is prima faeie negligence, for which the company is liable; and' that to exonerate itself from the liability thus presumptively arising, it must show that the mistake was not attributable to its fault or negligence. This rule not only rests upon sound reason, but is well sustained by well considered cases. Bartlett v. Western Union Ted. Co., 62 Me. 209; Rittenhouse v. Independent Line of Telegraph, 44 N. Y. 263; Tyler, &c. v. W. U. Tel. Co., 60 Ill. 421; Baldwin v. U. S. Tel. Co., 45 N. Y. 744; W. U. Tel. Co. v. Carew, 15 Mich. 525; De La Grange v. S. W. Tel. Co., 25 La. An. 383; W. U. Tel. Co. v. Meek, 49 Ind. 53; Turner v. Hawkeye Tel. Co., 41 Iowa, 458.
If the error or mistake is attributable to atmospheric causes or disturbances, or to any cause for which the company is not at fault, it is entirely within its power to show it. To require the sender of the message to establish the particular act of *314 negligence, or ferret out the particular locality where the negligent act occurred, after showing the mistake itself, would be to require in many cases, an impossibility, not infrequently resulting in enabling the company to evade a just liability. We are further of the opinion, that the court did not err in holding, and so instructing the jury, that the message received by the company for transmission was not obscure within the meaning of the stipulation in the agreement under which the message was sent. It appeared upon its face that it related to a business transaction, a transaction involving the purchase and sale of property. The company was therefore apprised of the fact that a pecuniary loss might result from an incorrect transmission of the message. "Where this appears, there is no such obscurity as relieves the company from liability for negligently failing to transmit and deliver the message in the language in which it was received. Western Union Tel. Co. v. Wenger, 55 Penn. St. 262; Rittenhouse v. Independent Line of Tel., 44 N. Y. 265; Manville v. W. U. Tel. Co., 37 Iowa, 220.

Judgment affirmed.

Okey, J.
The view taken of this case in the opinion of the chief justice is, in my judgment, wrong. In the argument for the plaintiff in error in this court, a reversal of the judgment in the court below is sought upon three grounds only. First: It was not shown that the defendant below failed to correctly transmit the message received, and therefore a new trial should have been granted. Second: The verdict is not supported by sufficient evidence, in that the damages are excessive. Third: The court erred in the charge with respect to the special contract.
I will briefly consider these alleged grounds of error, but not in the order they are discussed by counsel.
1. As to the special contract with respect to the message, set forth in the statement of the case. The contract, though made in Canada, with the Montreal Telegraph Company, applies in terms “ through the whole course of this message on all the lines by which it may be transmitted.” The statutes *315 of this state (S. & S. 155, § 137; 1 S. & C. 298 ; Rev. Stats. § 3462), conferring power on telegraph companies to make rules and regulations, are the same as in Massachusetts and other states, and, according to the construction placed thereon, in several states, the stipulations in the special contract in this case are, with a single exception, such as telegraph companies may lawfully make. Grinnell v. Telegraph Co., 113 Mass. 299; 30 Ohio St. 557.
I am entirely satisfied with GrmnelVs case; and in asserting a principle inconsistent with it, this court is opposed by the clear weight of authority. 2 Thompson on Neg. 841. But by the contract relied on in this case, a special agreement could only be made with the superintendent of the company. To require that one desiring to make such special agreement, shall hunt up the superintendent, is unreasonable, and renders the regulation wholly void. Tyler v. Telegraph Co., 60 Ill. 421-438; affirmed, 74 Ill. 168.
2. Did the plaintiff in error fail to correctly transmit and deliver the message ? The answer amounts to a general denial ; at least, it was so regarded by both parties during the trial; and although, during the charge, the plaintiffs below suggested that certain allegations in the petition were not denied, the court said to the jury that this was a mistake, and that the jury must regard all allegations in the petition as denied. Whether this was strictly accurate or not, we should, under'the circumstances, on the hearing of this petition in error, regard the answer in the same way.
The court charged the jury that the burden was on Griswold & Dunham to show negligence. If that charge was correct, the verdict was wrong; for negligence was not proved. The destruction of the original message by the telegraph companies, and two or three other facts relied on to show such negligence, are wholly insufficient to show any negligence whatever. But the charge was not correct. Where suit is brought for a loss of goods against the last of several connecting common carriers, the burden is on such last carrier, on proof that the goods were lost or injured in transit, to show that the loss did not occur on his part of the line. Laughlin v. Railroad, 28 Wis. 204; *316 Dixon v. Railroad, 74 N. C. 538; Smith v. Railroad, 43 Barb. 225 ; affirmed, 41 N. Y. 620 ; 2 Daly, 463; Brintmall v. Railroad, 32 Vt. 665. The same principle has been applied, and I think properly applied, in the case of connecting telegraph companies. De La Grange v. Telegraph Co., 25 La. Ann. 383. The burden to show by evidence, that the .mistake in this case was not the result of negligence on the part of the agents of the plaintiff in error—the proof showing that the message received by the defendants in error, was not the same as when delivered to the Montreal Telegraph Company— rested, therefore, upon the plaintiff in error; but it offered no such proof.
3. Were the damages excessive? Cowpland was the agent of Griswold & Dunham to purchase and pay for the seed in Canada, and he was to be paid for his services by them. This is so stated in the petition, and shown by the evidence. Cowpland testifies that he did not know any mistake in the message had been made until January 30, 1872, which was after Griswold & Dunham had sustained all the injury of which they complain. But if there is a fact clearer than all others in the case, it is that Cowpland ascertained the mistake January 5, 1872. About this there can be no sort of doubt. Now, on January 5, Cowpland had not received or paid for a bushel of the seed, and besides the seed was then worth at London, Canada, one dollar and forty-five cents per bushel. He had it in his power, therefore, to prevent the larger part, if not all the loss sustained by his principals, which loss they are now shifting upon the telegraph company. This can be justified neither in morals nor law. Notice to Cowpland on January 5, 1872, was notice to Griswold & Dunham. Wade on Notice, § 672 et seq. And see 2 Thompson on Neg. 858. I am of opinion, therefore, that a new trial should have been granted, upon the ground that the damages were excessive.
This case was decided before Longworth, J., came on the bench.