### BENNETT *et al. v.* WESTERN UNION TEL. Co.

*(Supreme Court, General Term, Fifth Department.* October, 1888.)

1. TELEGRAPH COMPANIES—NEGLIGENCE—NOTICE OF CLAIM.

   Plaintiff informed the operator of a mistake in transmitting a message, and was by him referred to the principal office, where a clerk told him the manager was busy, and took down his complaint in writing, and handed it to a person in another room, whom he introduced as attorney of the company, which attorney promised to investigate the matter, and afterwards, in reply to plaintiff's inquiry, wrote a letter rejecting the claim, using paper and an envelope with printed headings representing him to be attorney of the company. *Held,* that it sufficiently appeared that complaint was made to the proper authorities.

2. SAME—LIMITATIONS ON LIABILITY.

   The contract printed at the top of a telegraph blank limiting liability for negligence or delay in transmitting an unrepeated message to the amount paid for its transmission, and a repeated message to 50 times the amount paid, is reasonable and binding upon one accustomed to use such blanks, and it is error to refuse to limit recovery to $12.50 for error in a 25 cent message requesting a certain horse to be shipped, which, on receipt, read horses, and which some attempt was made by the receiver to have repeated.[1]

Appeal from Wayne county court.

Action begun before a justice by L. R. Bennett and son against the Western Union Telegraph Company for error in transmitting a message. On appeal to the county court a verdict for $51 damages was recovered, upon which judgment was entered, and the defendant appealed.

*E. W. Hamm,* for appellant.     *C. H. Ray,* for respondents.

DWIGHT, J.     The action was to recover damages occasioned by the inaccurate transmission of a telegraphic message from New York city to Lyons. The plaintiffs (father and son) were dealers in horses at the latter place. On the 6th of June, 1887, the elder Bennett, being in New York, and wishing to have a particular horse shipped to him from home, visited one of the offices of the defendant in the city, and wrote, on one of the blanks usually supplied to customers for that purpose, the message addressed to his son at Lyons, "Ship the brown horse, Kilburn horse." The message was handed to the operator, read aloud by him, and correctly, to the writer, paid for by the latter at the usual rate for an unrepeated message, and left for transmission. When the message was received at Lyons and delivered to the younger Bennett, the letter "s" was added to the last word, so that it read, "Send the brown horse, Kilburn horses." The younger Bennett, doubting the correctness of the copy of the message received by him, took it to the Lyons office, where he learned that it had been correctly transcribed from the message there received. On the advice of the operator he telegraphed to his father, to learn what the message was intended to be; but, his father having left the city for the day, he received no answer to that communication. He then, as he testifies, asked the operator if the first message could be repeated, and, being told it could, said, "I wish you would find out right away." To the direct question, "Did you then request him to repeat it?" he answered "I did, and he said, 'I will; I will get it right for you.'" The operator testifies that the conversation was as follows: "He told me he thought there was a mistake in that message, * * * and asked if there was any way to find out, and I told

---

[1] As to how far telegraph companies may limit their liability by contract, see Telegraph Co. v. Crall, (Kan.) 17 Pac. Rep. 309, and note; Fowler v. Telegraph Co., (Me.) 15 Atl. Rep. 29, and note; Telegraph Co. v. Way, (Ala.) 4 South. Rep. 844, and note; Thompson v. Telegraph Co., (Wis.) 25 N. W. Rep. 789, and note.

him I would ascertain from the office sending on the message, and see if my copy was correct; which I did. * * * He did not request me to repeat the message to New York at any time." The operator did procure the message to be repeated to him from the Syracuse office, from which it had been transmitted to Lyons, and, the second transmission being the same as the first, testifies that he reported that fact to the younger Bennett. The latter did not pay or offer to pay for the repetition of the message, but testifies that he thought the expense would be charged to the firm in the account which they were accustomed to have with the telegraph office. The younger Bennett thereupon proceeded to ship three horses to his father in New York, the result of which action was the damages of $51 by way of freight and expenses, for which this verdict was rendered. The plaintiff in New York having received a dispatch the next morning informing him that the three horses had been shipped, went to the office from which he had sent the original message, complained to the operator of the mistake which had been made, and was directed by him to the principal office of the defendant. There he was informed by the person in charge, who said he was the clerk of Mr. Humiston, the office manager, that the latter was busy, and he was requested to make his business known to the clerk. He thereupon stated his complaint, which the clerk said he would take down in writing, and which he proceeded to do. The clerk then took the plaintiff to another room in the same building, where he introduced him to a gentleman whom he represented to be the attorney for the company, Mr. George A. Ferons, and to whom he handed the paper which he had written. Mr. Ferons said he would investigate the matter, and write the plaintiff in 10 days. After the expiration of that time, the plaintiff L. R. Bennett wrote Mr. Ferons a letter from Lyons, calling his attention to the subject. This letter was produced on the trial by the attorney of record, who also tried the case, for the defendant. To this letter the plaintiff received an answer from Mr. Ferons, written under a printed heading, which described him as the attorney for the Western Union Telegraph Company, and inclosed in an envelope upon which was printed a direction to return, after 10 days, to the Western Union Telegraph Company, Attorney's office, in which the plaintiff's claim was rejected, on the ground, in substance, that it was not within the contract of the company, evidenced by the printed matter of the form on which the message was written. All the evidence in relation to the presentation of this claim was objected to on the ground that it was not shown that the persons with whom the plaintiff dealt were authorized to act or speak for the defendant. We think these objections were not well taken, and that there was sufficient evidence, *prima facie*, to establish the fact that the complaint reached the defendant, and satisfied the requirements of the contract in that respect.

But upon the other questions in the case our decision must be adverse to the judgment. The law applicable to those questions seems to have been settled by repeated adjudications of our own court of last resort as well as the courts of other states. The decisions referred to concern themselves with the contents and effect of the printed matter borne on the face of the sheet on which the message of the plaintiff was written, to which his attention was invited by the words printed in large characters immediately beneath his signature, "Read the notice and agreement at the top;" in which prominence was given to the statement, "All messages taken by this company are subject to the following terms," and which contained the words, at the top of the space in which the message itself was written, "Send the following message, subject to the above terms, which are hereby agreed to." The law must be regarded as settled to the effect that telegraph companies are not, unless by special contract, insurers, nor subject to the measure of liability imposed upon common carriers of merchandise; that they may limit their liability by reasonable stipulations; that the stipulations contained in the contract in this case

are reasonable; and that the writer of the message, especially where, as in this case, he has been accustomed to use similar blanks, must be assumed to be aware of their contents, and to assent to the terms of the contract therein contained. These propositions are fully sustained by the cases of *Breese* v. *Telegraph Co.*, 48 N. Y. 132; *Young* v. *Telegraph Co.*, 65 N. Y. 163; *Kiley* v. *Same*, 16 N. E. Rep. 75. Among the terms of the contract thus binding upon the plaintiff was one to the effect that the defendant will not be responsible, even in case of negligence of its servants, for damages resulting from error or delay in the transmission of an unrepeated message, beyond the sum paid for its transmission. The printed matter also clearly points out what is meant by the term "repeated" in this connection; using this language, "To guard against mistakes and delays the sender of the message should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition." The sender of this message did not avail himself of this means of securing its correct transmission. He did not ask nor pay for its repetition in any manner. His son at Lyons did make some effort to ascertain if the message was correct as received by him, but he did not direct that it should be telegraphed back to New York for comparison. What he suggested seems to have been that the operator at Lyons should procure the message to be repeated to him, and this was done from the office with which he was in direct communication. The message never was in fact "repeated," in the sense of the contract; and it is doubtful if the evidence would warrant the finding that any direction or request was made to have it so repeated. If not, then, under the condition of the contract already quoted, there was no liability on the part of the defendant for damages beyond the sum paid for the transmission of the message. But further, the contract equally limits the liability of the defendant in case of a repeated message, unless expressly insured, to a sum equal to 50 times the amount paid for transmission. So that, if it were to be held that the message in this case was entitled to the terms of a repeated message, it was error to deny the defendant's motion to limit the recovery to the sum of $12.50. There is no ground for any contention in this case that gross negligence was chargeable to the defendant. On the contrary, it is rather open to question whether it was established that the error complained of was due to negligence at all. But it is not necessary to consider that question more fully at this time. If the views already expressed are correct, whether this message was repeated or unrepeated, the court failed to give the instruction to the jury in respect to the measure of the defendant's liability, to which, under the terms of its contract, the defendant was entitled. For this error the judgment must be reversed, and a new trial granted, costs to abide the event. All concur; HAIGHT, J., in the result.