JOSEPH A. WHEELOCK & others vs. POSTAL TELEGRAPH
CABLE COMPANY OF MASSACHUSETTS.

Suffolk. November 21, 1907. — January 1, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Contract*, Validity, Performance and breach, Waiver of condition. *Waiver. Negligence. Telegraph. Damages*, For failure to transmit telegraph message. *Statute.*

A condition, imposed by a telegraph company and made a part of its contract with the sender of a message, that the company shall "not be liable in any case" for mistakes in the transmission or delivery or for non-delivery of the message "where the claim is not presented in writing within sixty days after the filing of the message," is reasonable and valid.

In an action of contract or tort against a telegraph company for failure to deliver a message filed with it by the plaintiff in Boston on January 9 for delivery in Australia, it appeared that the defendant received the message subject to the condition, which was a part of its contract with the plaintiff, that it would not be liable upon any claim for damages resulting from non-delivery of the message "where the claim" was "not presented in writing within sixty days after the filing of the message"; that the plaintiff first learned of the non-delivery of the message on February 23 and immediately interviewed the defendant's general manager, seeking an explanation, and he wrote to the plaintiff the next day stating that he had instituted an investigation and that a full report would be "delayed some weeks." Ten days later a representative of the defendant tendered to the plaintiff the amount of tolls he had paid for the message and the tender was refused. On April 4 the defendant wrote the plaintiff a letter stating that "the full extent of" its liability was the tolls which the plaintiff had paid. Thereafter, for the first time, the plaintiff consulted counsel who sent to the defendant on April 12 a written claim for damages, to which the defendant replied on May 14, saying that it had never received any claim from the plaintiff but had received an oral complaint, and renewed the offer to return the tolls. On June 1, the defendant wrote the plaintiff's counsel stating that the plaintiff had no legal or equitable claim against the defendant beyond the amount of the tolls. *Held,* that there was evidence for the jury on the question whether the defendant had waived its right to rely on the condition in the contract limiting the time within which the plaintiff's claim should be presented in writing, as well as its right to rely on the provision to the same effect in R. L. c. 122, § 11, the provision in the statute being one which the defendant might waive since it was inserted solely for the benefit of telegraph companies.

Where a telegraph company, for an additional charge equal to one quarter of its regular rate, gives to a person desiring to send a message an opportunity of insuring correct transmission by having the message repeated, a limitation of liability for non-delivery of, or mistakes in the transmission or delivery of, the message, imposed by it as a condition upon which it will accept an unrepeated message and made a part of its contract with the sender of such message, is reasonable and precludes the sender from recovering damages for such non-delivery or mis-

takes occurring by reason of negligence of the company which does not amount to wilful misconduct or gross negligence.

Whether anything less than a reckless and wanton disregard of known duties could be considered as amounting to the gross negligence which, on the part of a telegraph company, would render ineffectual a reasonable condition contained in its contract with the sender providing for a limitation of the liability for failure to transmit a message, *quaere.*

Evidence tending to show that a telegraph company, with whom was filed in Boston a message in cipher to be delivered in Australia, the company previously having been informed that the sender, a regular customer, was a wool merchant and was likely to suffer financial loss if his messages were not delivered properly, and the sender stating to the company's agent that the message in question was " very important and must be transmitted correctly," did not transmit the message beyond New York, is not sufficient to prove the gross negligence on the part of the company which is necessary to make ineffectual a valid limitation of its liability for non-delivery, which was made a part of its contract with the sender.

In an action of contract or tort against a telegraph company for failure to transmit a message delivered to it for transmission by the plaintiff under a contract limiting the liability of the defendant for errors in transmission or non-delivery of such a message, the defendant by the provisions of R. L. c. 122, § 11, is deprived of the defence of such limitation as to damages not exceeding $100.

The provisions of R. L. c. 122, § 11, with regard to the liability of a telegraph company for damages not exceeding one hundred dollars resulting from its negligence in the transmission of a message notwithstanding a limitation of liability in its contract with the sender, do not change the rule of the common law for estimating such damages, that, where there is nothing in the transaction with the sender to bring home to the company knowledge or information as to any particular damage which will be likely to result from a mistake in transmission of the message, the damages that can be recovered are only the expense of sending it.

At the trial of an action of contract or tort against a telegraph company for failure to transmit a message filed with it by the plaintiff in Boston for transmission to Australia, there was evidence tending to show that, at different times before the filing of the message by the plaintiff, he had informed the defendant that he was a wool merchant and that mistakes and delays in sending his messages would cause him financial loss. It further appeared that the defendant would insure correct delivery of any message by repeating the message on payment of an extra charge of one quarter of the original charge, that the message in question was an unrepeated message and was in cipher and that, at the time it was delivered to the defendant's agent, he was " cautioned " by the plaintiff " that it was very important and must be transmitted correctly." It was admitted that the message never was transmitted. *Held,* that there was nothing to show that the probability of special damages to the plaintiff as a result of a failure to transmit the message was within the contemplation of the parties when the message was received by the defendant for transmission, and that therefore the plaintiff was limited in his recovery to his expense in sending the message.

CONTRACT OR TORT, with two counts alleged to be for the same cause of action, the first being in contract and the second in tort, for failure of the defendant to transmit a cable message given

to it by the plaintiffs in Boston for transmission to Australia. Writ in the Superior Court for the county of Suffolk dated June 4, 1906.

At the trial, which was before *Pierce*, J., upon the defendant's suggesting that, on all the evidence which the plaintiffs intended to offer, they would not be entitled to go to the jury, it was agreed that, for the sake of expediting matters, the plaintiffs should submit an offer of proof, which was done. Among the facts offered to be proved, besides those stated in the opinion, the plaintiffs offered to show that the man who on behalf of the defendant received the message in question "was cautioned by the plaintiffs' clerk [who delivered it to him] that it was very important . . . and must be transmitted correctly."

After the plaintiffs had submitted their offer of proof, the presiding judge ruled that they were not entitled to go to the jury, and ordered a verdict for the defendant, and the plaintiffs excepted.

*R. G. Dodge*, (*C. W. Blood* with him,) for the plaintiffs.

*G. P. Wardner & C. H. Walker*, for the defendant.

KNOWLTON, C. J. The plaintiffs delivered to the defendant a message for transmission to their agents in Australia. It failed to reach its destination, and this action was brought to recover damages suffered by the plaintiffs from this cause. The conditions on the back of the blank, subject to which the message was received, and the contract made by the defendant, were, in part, as follows: "To guard against mistakes or delays, the sender of a message should write it legibly and order it repeated, that is, telegraphed back to the sending station for comparison. For such repeating an additional charge of one-quarter the regular rate will be made. . . . It is agreed between the sender of the message on the face hereof and this company that said company shall not be liable for mistakes or delays in transmission or delivery, or for non-delivery or misdelivery of any unrepeated message beyond the amount of that portion of the charge which may or shall accrue to this company out of the amount received from the sender for this and the other companies by whose lines such message may pass to reach its destination, and that this company shall not be liable for mistakes in the transmission or delivery, or for non-delivery or misdelivery of any repeated message be-

yond fifty times the extra sum received by this company from the sender, for repeating such message over its own lines. . . . This company shall not be liable in any case where the claim is not presented in writing within sixty days after the filing of the message." The message was delivered to the defendant for transmission on January 9, 1906, and it contained in cipher a direction to the plaintiffs' agents in Melbourne, Australia, to buy a quantity of wool. The agents had no knowledge of this message until on or about February 22, when they received from the plaintiffs a letter written on January 20 which contained a reference to the message. They immediately sent a message in cipher to the plaintiffs, which was received on February 23, of which the translation was as follows: "Have not received any telegram dated January 9, referring to your letter dated January 20." The plaintiffs, on February 23, sent their clerk to the defendant's office, and he saw the general manager and showed him the cablegram from the plaintiffs' agents, and told him how important it was to get their messages through, and asked for an explanation. Within a few days he called once or twice more to inquire about the matter, and was informed that nothing had been learned. Under date of February 23 the defendant's manager wrote the plaintiffs a letter, which, omitting the formal parts, was as follows: "We are investigating the service of your cablegram of January 9 to Scuiridae, Melbourne. This investigation is made through mail, and a full report of service will necessarily be delayed some weeks. The investigation will be most thorough, and the party at fault for any negligence that may be shown will be promptly reprimanded. We will communicate with you further immediately upon return of these papers." Ten days after this a representative of the defendant called at the plaintiffs' office and tendered one of the firm a sum equivalent to the cost of sending the message, stating that this was all the defendant would do, and asking for a receipt for the money. The plaintiffs refused to accept the money. No further communication was received from the defendant in regard to the matter until about April 4, 1906, when the defendant handed them a letter dated April 3, which had been written by the superintendent of the defendant's claim department to the defendant's general superintendent, which referred to the plaintiffs'

complaint in regard to this cipher cablegram, and continued as follows: " Investigation shows that this message was promptly transmitted from originating station; but in view of the statement of the firm in Melbourne for whom it is said to have been intended that they did not receive it, the tolls may be refunded to the sender. This would be the full extent of the liability of the company in whose hands the failure may be shown to have occurred." Immediately afterwards the plaintiffs consulted counsel for the first time in regard to the matter. On April 12 they sent the defendant a written claim for damages growing out of the loss of the message. On May 14, 1906, the defendant sent to the plaintiffs' counsel a letter which had been written by its vice-president to its general superintendent, referring to the letter of the counsel in regard to the claim, and saying that the company had never received any claim from the plaintiffs, but had received an oral complaint about the cablegram. The letter went on to state the facts in regard to the receipt of the message for transmission, and the result of the investigation, and the offer of the defendant to refund the tolls to the senders. It ended with these words: " Of course we could not have favorably considered any other claim in the matter. Please advise the attorneys accordingly." On June 1, 1906, the defendant's vice-president wrote to the plaintiffs' counsel, saying that, as the plaintiffs had no legal or equitable claim against the company, and could not have against any other company, for any sum in excess of the tolls on the message, no claim could be entertained. This suit was brought on June 4, 1906.

The first question in the case relates to that part of the contract which relieves the company from liability " where the claim is not presented in writing within sixty days after the filing of the message." Such a stipulation is a reasonable provision for the protection of the company against stale claims, and for securing an opportunity to investigate claims founded on an alleged breach of contract, or any negligence, before the facts pass out of the memory of those who ought to know them. The validity of this kind of requirement has been sustained by a great weight of authority. *Grinnell* v. *Western Union Telegraph Co.* 113 Mass. 299, 307. *Primrose* v. *Western Union Telegraph Co.* 154 U. S. 1. *Young* v. *Western Union Telegraph Co.* 65 N. Y. 163

*Heiman* v. *Western Union Telegraph Co.* 57 Wis. 562, 565. *Western Union Telegraph Co.* v. *Dougherty*, 54 Ark. 221, 223. *Wolf* v. *Western Union Telegraph Co.* 62 Penn. St. 83.   *Russell* v. *Western Union Telegraph Co.* 57 Kans. 230.   *Albers* v. *Western Union Telegraph Co.* 98 Iowa, 51.   *Hill* v. *Western Union Telegraph Co.* 85 Ga. 425.   *Cole* v. *Western Union Telegraph Co.* 33 Minn. 227.   The decision in *Conrad* v. *Western Union Telegraph Co.* 162 Penn. St. 204, that such a condition was not reasonable in reference to a message sent from Philadelphia to Shang-Hai, is not in accordance with the general current of authority, and we are not inclined to follow it.   Other cases relied on by the plaintiffs have held such a limitation to be inapplicable or unreasonable where the message was not delivered.   Some of these were decided upon language different from that before us, and others upon grounds that are inconsistent with the decision in this Commonwealth.   Such a limitation has express legislative sanction in the R. L. c. 122, § 11.   We are of opinion that this is a reasonable provision which was binding upon the plaintiffs.

It is contended by the plaintiffs that this requirement was waived by the defendant.   Questions like that which arise on this contention have often been considered in suits upon policies of insurance.   There was a series of communications between the parties touching the subject, in all of which, from first to last, the defendant discussed the question of liability on its merits, and professed in the beginning to intend to deal with it, and finally to have dealt with it, in reference to rights created by other parts of the contract, apart from any question as to the formal presentation of a claim in writing.   The defendant's conduct in regard to it was such as naturally to throw the plaintiffs off their guard, and it appears that they did not read this stipulation nor consult counsel about their claim until after the sixty days had expired.   We think they naturally might infer from the defendant's conduct that the claim was to be considered and determined upon its merits, and that there was no intention to set up a formal or technical defence, founded on the time or manner of presenting the claim.   We are of opinion that there was evidence for the jury on the question whether the defendant waived its right to rely upon this defence.   *Walker* v. *Lanca-*

*shire Ins. Co.* 188 Mass. 560.   *Graves* v. *Washington Ins. Co.* 12 Allen, 391.   *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263, 265.   *Brown* v. *Henry,* 172 Mass. 559, 567.   *Moore* v. *Wildey Casualty Co.* 176 Mass. 418.   *Hill* v. *Western Union Telegraph Co.* 85 Ga. 425.   *Hays* v. *Western Union Telegraph Co.* 70 S. C. 16. *Western Union Telegraph Co.* v. *Stratemeier,* 6 Ind. App. 125, 130.

It becomes necessary to consider the question of damages.   By the terms of the contract there was a strict limitation of liability for damages for unrepeated messages, a greater liability being created by having a message repeated.   The limitation of liability was reasonable and binding, in the absence of wilful misconduct or gross negligence on the part of the company.   *Ellis* v. *American Telegraph Co.* 13 Allen, 226.   *Redpath* v. *Western Union Telegraph Co.* 112 Mass. 71.   *Grinnell* v. *Western Union Telegraph Co.* 113 Mass. 299.   *Clement* v. *Western Union Telegraph Co.* 137 Mass. 463.   *Primrose* v. *Western Union Telegraph Co.* 154 U. S. 1.   Whether any kind of negligence less than a reckless and wanton disregard of known duties, such as is referred to in *Banks* v. *Braman,* 188 Mass. 367, and *Bjornquist* v. *Boston & Albany Railroad,* 185 Mass. 130, could be considered gross in such a sense as to nullify this provision, we have no occasion in this case to inquire.   No evidence of gross negligence was introduced or offered at the trial.

This stipulation limiting liability would leave the plaintiffs with no claim beyond the amount paid for the transmission of the message if there were no statute touching the subject.

The first part of § 11 of the R. L. c. 122 is as follows: " A telegraph company shall be liable for damages to the amount of one hundred dollars actually caused by its negligence, or that of its agents, in transmitting, receiving or delivering telegraphic messages, and any limit of such liability by contract or regulation shall apply only to the damages in each case in excess of one hundred dollars; but no action therefor shall be maintained unless the claim is presented in writing to such company or its agent within sixty days after such right of action accrues."   The plaintiffs having failed to present their claim in writing within sixty days after the right of action accrued, could not take advantage of this section, if there had been no waiver by the telegraph company; but as this part of the section is a provision

solely for the benefit of the company, it might waive it, as it might waive a similar provision in the contract between the parties. The evidence already referred to can be availed of by the plaintiffs to establish their contention that there was a waiver of this requirement of the statute, as well as their similar contention that there was a waiver of the similar provision in the contract.

This statute deprives the defendant of its defence under the contract as to damages not exceeding $100. We must therefore consider whether the rule for estimating damages within this amount is different under the statute from that existing at common law. We are of opinion that it is not. The statute simply takes away the defence created by the contract as to damages not exceeding $100, and it leaves the rule for determining these damages unchanged. The liability is only for damages " actually caused by its negligence." The liability at common law is the same.

In a case like the present, where there is nothing in the transaction to bring home to the telegraph company knowledge or information of any particular damage which will be likely to result from a mistake in sending a message, or a failure to deliver it, the damages that can be recovered are only the expenses of sending it. To state the rule in more general terms, the damages to be recovered are only such as are the natural and proximate result of its conduct, and such as reasonably might have been expected to be within the contemplation of the parties when the contract was entered into as the probable result of a breach of it. *Baldwin* v. *United States Telegraph Co.* 45 N. Y. 744, 752. *Western Union Telegraph Co.* v. *Hall,* 124 U. S. 444, 456. *Primrose* v. *Western Union Telegraph Co.* 154 U. S. 1, 29. *Squire* v. *Western Union Telegraph Co.* 98 Mass. 232. *Swift River Co.* v. *Fitchburg Railroad,* 169 Mass. 326. *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298. *Hadley* v. *Baxendale,* 9 Exch. 341. 27 Am. & Eng. Encyc. of Law, (2d ed.) 1059, 1060, and cases in note. The general rule is stated clearly in the two cases above cited from the supreme court of the United States, in the last of which the review of the authorities by Mr. Justice Gray is very full and elaborate.

The plaintiffs contend that the information to the defendant's

clerks and manager, at different times before the sending of this message, that the plaintiffs were wool merchants, and that mistakes and delays in sending messages would cause financial loss to the plaintiffs, and the "caution" that this message was very important and must be transmitted correctly would charge the defendant with knowledge of this cablegram, such that the loss that might result from the error or delay in transmitting it would be within the contemplation of the parties as a damage for which compensation should be made. But in this connection it is to be noticed that the plaintiffs sent the message without ordering it to be repeated, which, under the contract, would have greatly increased the defendant's liability at a small cost to themselves. A statement as to the importance of the plaintiffs' general business would indicate nothing as to a particular message. In such a business there would be some messages the non-delivery of which would cause the sender a large loss, while the non-delivery of some others would cause no loss. In a cipher message such as this was, with no statement of any of the facts, to which it related, but only information that it was very important, there would be nothing to show the nature or extent of the loss, if any, that would result from a non-delivery of it. In this particular the case is almost identical with *Primrose* v. *Western Union Telegraph Co.* 154 U. S. 1, and is covered by it. *Candee* v. *Western Union Telegraph Co.* 34 Wis. 471, involving the same question upon similar facts, is to the same effect. See also *Harvey* v. *Connecticut & Passumpsic Rivers Railroad*, 124 Mass. 421, 424; *Western Union Telegraph Co.* v. *Coggin*, 68 Fed. Rep. 137; *United States Telegraph Co.* v. *Gildersleve*, 29 Md. 232; *Cahn* v. *Western Union Telegraph Co.* 48 Fed. Rep. 810.

We are of opinion that, upon the evidence offered, there is nothing to show that the probability of special damages to the plaintiffs, as a result of a failure of the defendant to perform its contract or to do its duty, was within the contemplation of the parties when the message was received by the defendant for transmission. But the evidence offered would have warranted the jury in finding a liability for damages to the amount of the plaintiffs' expenses in sending the message.

*Exceptions sustained.*