WILLIAM M. VERMILYE *vs.* POSTAL TELEGRAPH CABLE COMPANY OF MASSACHUSETTS.

Suffolk.     March 4, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Telegraph Company,* Liability for refusal to transmit message.  *Words,* "Wilful."

A telegraph company is engaged in a *quasi* public employment, to be carried on for the accommodation of the community with a view to the general benefit, and has no right to refuse to receive a proper message for whose transmission payment is tendered.

The rule stated in *Wheelock* v. *Postal Telegraph Cable Co.* 197 Mass. 119, is that the damages to be recovered for a breach of contract in transmitting a telegraphic message are such as reasonably might have been expected to be within the contemplation of the sender and of the telegraph company by reason of the contents of the message or of the circumstances attending the transaction when the contract for its transmission was made. For his protection under this rule, one

desiring to send a business telegraphic message from Boston to New York pasted thereon, in a position where its presence had no tendency to confuse the telegraph operator and did not increase the probability of error or delay in the transmission of the message, a small sticker containing the following: "Notice is hereby given that this is a business message, and that failure to deliver it promptly and correctly is likely to cause the sender financial loss. Further particulars will be furnished if desired on application to the sender at" an address given. The message and the sticker were upon an ordinary blank furnished by the company, on the back of which were printed certain "terms and conditions," among which it was stipulated, "It is agreed between the sender of the message written on the face hereof and the . . . company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message, beyond the amount received for sending the same." An extra charge would be made for sending a repeated message. The sender tendered to the company the message with the sticker thereon and with the fee for the sending of it unrepeated. The company refused absolutely to transmit the message while it was accompanied with the notice. *Held,* that the absolute refusal of the defendant to receive and send the message was unreasonable, and that the company was liable either at common law or under R. L. c. 122, §§ 9, 11, for damages resulting from such refusal.

A telegraph company, which intentionally and unreasonably refuses to transmit, for one proffering it for transmission together with the usual fee therefor, a message which has affixed thereto by means of a sticker a notice informing the company as to the nature of the message and its importance to the sender from a financial point of view in order that the nature and particulars of the undertaking of the company may be understood by it, renders itself liable to pay to the sender of the message the penalty provided by R. L. c. 122, §§ 9, 10, for a wilful refusal to transmit a message faithfully and impartially, such intentional and unreasonable refusal being wilful and within the meaning of the statute.

TORT, with a declaration in three counts, the first count being at common law for damages resulting from the refusal of the defendant to transmit a telegraphic message for the plaintiff, and the second count being under R. L. c. 122, §§ 9, 11, for the same cause of action. The third count was for recovery of the penalty prescribed by R. L. c. 122, § 10, for the wilful neglect and refusal of a telegraph company to comply with the requirements of § 9. Writ dated May 8, 1908.

The case was heard by *Schofield,* J., without a jury. He made findings and rulings substantially as follows:

The plaintiff is the Boston agent of A. G. Hyde and Sons, a New York corporation engaged in the conversion of textile fabric. On April 7, 1908, he presented at the Essex Street office of the defendant in Boston, with the money necessary to pay the charges for its transmission as an unrepeated message, the following telegraphic message for transmission to his principal:

"Apr. 7, 1908.

"A. G. Hyde & Sons,
　　　361 Broadway,
　　　　　New York, N. Y.
"Express Purbeck four pieces Sakana Shade one fifty-six.
　　　　　　　　　　　　　　"William M. Vermilye."

The message was written on a blank form furnished by the defendant.* On the blank, which was of yellow paper, in the indented space opposite the three lines containing the name and address of A. G. Hyde and Sons, the plaintiff had pasted a small sticker about three fourths of an inch in width and two inches in length, of white paper, on which was printed in small type, in blue ink, enclosed in a well-defined rectangular ruled line or border, the notice set out in the opinion. The message was a genuine business message. The person to whom the message was presented at the defendant's office refused to receive it, but informed the plaintiff that if he took the sticker off he would send the telegram. Nothing was said in regard to repeating the message or transmitting it at the rates charged for a repeated or an insured message. The plaintiff was told, " We do not accept

---

* On the back of this blank, under the words " Terms and Conditions," was included the following :

" To guard against mistakes or delays, the sender of a message should order it REPEATED ; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the message written on the face hereof and the Postal Telegraph-Cable Company, that said Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED message, beyond the amount received for sending the same ; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this Company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other Company when necessary to reach its destination.

" Correctness in the transmission of messages to any point on the lines of the Company can be INSURED by contract in writing, stating agreed amount of risk, and payment of premium thereon, at the following rates, in addition to the usual charge for repeated messages, viz : one per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance."

these messages with the stickers on." The plaintiff suffered no pecuniary loss by reason of the refusal of the defendant to receive the message. He suffered the inconvenience involved in transmitting the message by some other channel, mail or telephone.

There was no rule or regulation of the defendant in existence previous to the presentation of this telegram, forbidding the pasting of a sticker like the one in question upon a telegraph blank with a message for transmission. The clerk who refused to receive this telegram acted in pursuance of instructions then recently received at the Essex Street office from the Boston manager of the defendant's business. The evidence shows that the plaintiff had on several previous occasions presented messages with similar stickers fastened upon them. The subject of accepting such messages had been under consideration by the Boston management of the defendant for some days. It was a new question, and resulted in an order which was first made known to the plaintiff when he presented the message in this case. There was no evidence that any person other than the plaintiff ever presented a message with a similar sticker and notice attached.

The plaintiff had often used blank forms of the defendant to send messages, and was familiar with the stipulations printed upon the back of them, including the provisions in respect to repeating and insuring and the cost thereof. His object in placing the sticker on this telegram was to put himself in a position to recover actual damages suffered by mis-transmission, or non-delivery, in excess of charges, under the rules then recently declared in *Wheelock v. Postal Telegraph Cable Co.* 197 Mass. 119. He was acting in good faith for the protection of his business interests and under legal advice.

"In respect to the form of the message as presented, F. Scott Smith, manager of the defendant's office at 96 Essex Street, testified . . . on cross-examination, ' In this case the sticker is placed after the address, and an operator in sending it might get confused.' . . . Upon careful consideration of the evidence in regard to confusing the operator, the court finds as a fact that the mere presence of the sticker and notice on the blank had no such tendency, and that they did not increase the probability of error or delay in transmitting the message. If further particulars were sought, as directed by the notice, delay would result, of course.

"There was evidence that the plaintiff at other times after April 7 tendered messages to the defendant for transmission, accompanied by a notice similar to that which is printed on the sticker used in this case. The notice was attached in different ways, and on one occasion was read to the defendant's clerk. . . . Upon all the material evidence the court finds as a fact that the sole ground of the refusal was that the message had attached to it the sticker containing the notice. The refusal to transmit the message with sticker attached was absolute, and broad enough to include a refusal if the rates for a repeated message or an insured message had been tendered.

"There was evidence tending to show the relations existing between the defendant and the Western Union Telegraph Company in reference to the conduct of their business. The court rules that all the evidence upon that subject admitted at the trial is competent and material, as having some tendency to show whether the action of the defendant in refusing to receive the message was reasonable or arbitrary. Upon all the material evidence upon this point the court finds that in the transmission of messages by electricity for the public between Boston and New York the Western Union Company and the defendant are the only companies engaged in the business and that there is practically no competition between them. Their rates are the same. The rates were recently changed at the same time, and to the same amount. The companies work in harmony with each other, and the conditions printed on the back of the telegraph forms furnished to the public by each are practically identical. All persons presenting messages for transmission are required to use these forms."

The trial judge found for the plaintiff in the sum of one dollar under each of the first two counts of the declaration, but required him to elect between the first and second counts before entry of judgment; under the third count, he found for the plaintiff in the sum of $50. The defendant alleged exceptions.

*G. P. Wardner & A. Lord*, for the defendant.

*O. O. Partridge*, (*S. F. Batchelder* with him,) for the plaintiff.

KNOWLTON, C. J. The plaintiff, having occasion to use the telegraph frequently in his business, and desiring to give a notice that would entitle him to recover special damages suf-

fered from a neglect of the defendant to transmit promptly and correctly a message which he took to its office to be sent, put upon the blank on which the message was written a gum "sticker," on which a notice was printed as follows: "Notice is hereby given that this is a business message, and that failure to deliver it promptly and correctly is likely to cause the sender financial loss.   Further particulars will be furnished if desired on application to the sender at 116 Bedford St., Boston." This he did for his protection under the rule stated in *Wheelock* v. *Postal Telegraph Cable Co.* 197 Mass. 119, and *Squire* v. *Western Union Telegraph Co.* 98 Mass. 232, 236, 237, that the damages to be recovered for a breach of contract in transmitting a telegraphic message are such as reasonably might have been expected to be within the contemplation of the parties, by reason of the contents of the message or the circumstances attending the transaction when the contract was made.   At different times other messages, accompanied by similar notices in different forms, were offered by the plaintiff to the defendant for transmission and refused, and one or more of this kind was sent.   Seemingly, both parties were trying to do that which was thought best for the protection of their respective rights and interests in reference to the liabilities growing out of this kind of contract.   The findings of the judge who tried the case without a jury have relieved the controversy of some of the questions which otherwise might arise.   He found that there was an absolute refusal of the defendant to receive and transmit the message while it was accompanied by such a notice.   Nothing was said by either party about having the message repeated or insured, as it might have been under the regulations of the company upon payment of an additional price.   He found that this refusal was without reference to the particular form in which the notice was presented, and that the form chosen by the plaintiff for the notice on this message had no tendency to confuse the operator, and did not increase the probability of error or delay in transmitting the message. These findings were well supported by the evidence.

The first count was at common law for a refusal to receive and forward the message, and the second was under the R. L. c. 122, §§ 9, 11, for the same cause of action.   The defendant was engaged in a *quasi* public employment, to be carried on for the accommo-

dation of the community, with a view to the general benefit. It had no right to refuse to receive a proper message, for whose transmission payment was tendered. R. L. c. 122, § 9. *Ellis* v. *American Telegraph Co.* 13 Allen, 226, 231. The only question raised is whether the giving of the notice by the plaintiff relieved the defendant of its obligation to transmit the message. It was certainly the right of the plaintiff to inform the defendant as to the nature of the message, and its importance from a financial point of view, in order that the nature and particulars of its undertaking might be understood by the defendant, and the obligation that it incurred in reference to damages for a breach of the contract. *Wheelock* v. *Postal Telegraph Cable Co.*, *ubi supra.* Such a notice would furnish no justification for a refusal to send a message, whether it might or might not be a sufficient reason for charging something more than the lowest rate established for the transmission of messages. See *Bernard* v. *Adams Express Co.*, *ante*, 254. It was intended to show that the damage for a failure properly to send and deliver the message would probably be substantial, and, under the statute and the rules and regulations of the company, to create a liability that might reach the sum of $100. Such a liability might exist without a special notice if the language of the message sufficiently indicated the importance of a prompt delivery of it, and the loss that would result from a failure to deliver it promptly. Whatever negotiations or proposals or limitations on the part of the defendant might have been warranted by the giving of the notice, the absolute refusal to receive and send the message was unreasonable, and justified a finding for the plaintiff under the first or second count, either under the statute or at common law.

The other count was under the R. L. c. 122, §§ 9, 10, to recover the forfeiture provided by § 10. The question under this count is whether the refusal of the defendant was wilful, within the meaning of the section. It is conceded that it was intentional, and the judge found that it was unreasonable. He ruled that a refusal that was both intentional and unreasonable was wilful, within the meaning of the statute. This ruling was right.

The defendant's argument upon this branch of the case is chiefly in the nature of an assumption that the conduct of the

defendant was reasonable, in reference to the different rates charged, depending upon whether the message was sent in the usual way or was repeated or insured, and in reference to the attempt to impose upon the defendant by the notice a liability that otherwise would not exist. This argument is answered by the findings of the judge that the refusal of the defendant was absolute, and without reference to the rates that might be charged in view of the different degrees of responsibility that might be assumed for a failure to transmit the message correctly and promptly.

We have already said that these findings were well warranted by the evidence.

*Exceptions overruled.*