WESTERN UNION TELEGRAPH CO. v. SCHOONMAKER. (No. 487.)*

(Court of Civil Appeals of Texas. El Paso. Dec. 2, 1915. Rehearing Denied Jan. 6, 1916.)

1. EVIDENCE ⬡⟿80 — PRESUMPTION OF FOREIGN LAW.

There is a presumption that the law of another state is the same as the state where the case is on trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. ⬡⟿80.]

2. TELEGRAPHS AND TELEPHONES ⬡⟿69—DELAY IN DELIVERY OF MESSAGE—EXEMPLARY DAMAGES.

Where a telegraph company was not negligent in employing an operator, did not authorize him to misdirect a message, and did not ratify his act in so doing, it was not liable for exemplary damages for such operator's gross negligence in so doing.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 71; Dec. Dig. ⬡⟿69.]

3. PLEADING ⬡⟿433—CURE BY VERDICT.

A verdict for exemplary damages, in an action against a telegraph company for negligently delaying delivery of a message, did not cure the defect of the petition, in that it did not allege that the act of the company's agent in changing the name of the addressee was directed

---

⬡⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

or ratified by the company, or that the latter was negligent in selecting the employé.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1451–1477; Dec. Dig. ☞433.]

**4. TELEGRAPHS AND TELEPHONES ☞37—DELIVERY OF TELEGRAPH DISPATCH.**

Where a telegram addressed in care of a third person had the addressee's name changed beyond recognition by the negligence of the sending agent of the company, so that it reached such third person with the name of the addressee changed, the delivery to the third person did not constitute in law a delivery to the addressee, though delivery with the name unchanged would have been.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. ☞37.]

**5. TELEGRAPHS AND TELEPHONES ☞37—DELIVERY.**

Where the sending agent of a telegraph company negligently changed the name of the addressee of a message sent in care of a third person, the fact that the third person, on receipt of the message, thought it might be intended for the addressee did not render delivery to him a delivery to the addressee.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. ☞37.]

**6. TELEGRAPHS AND TELEPHONES ☞67—DELAY IN DELIVERING MESSAGE — DAMAGES — COST OF TRANSPORTATION.**

Where delay in delivering a telegram that the addressee's son was dying caused the addressee to miss the train at a junction point on his journey to his son, the fact that the addressee was guilty of contributory negligence in not taking an automobile out of such junction point for his destination before he did did not relieve the telegraph company of liability for the difference in the actual and necessary cost to the addressee of reaching his destination by train and by automobile.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. ☞67.]

**7. COMMERCE ☞8 — REGULATION OF INTERSTATE TELEGRAPHIC COMMUNICATION — FEDERAL JURISDICTION.**

In determining the liability of a telegraph company for negligence in the transmission of an interstate dispatch, as affected by the contract limiting its liability, federal law is controlling, since by Act of Cong. June 18, 1910, Congress has undertaken the regulation of interstate telegraphic communication.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.]

**8. TELEGRAPHS AND TELEPHONES ☞54—DELAY IN DELIVERING A MESSAGE—EXEMPTION FROM LIABILITY.**

Where an interstate telegraphic dispatch, delay in delivery of which was sued for, was accepted by the company subject to a provision of a written contract that the company should not be liable for mistakes or delays in the transmission or delivery of, or for nondelivery of, any unrepeated message beyond the amount received for sending the same, unless the message was specially valued, etc., such agreement was not effectual to preclude recovery by the addressee of more than the cost of sending the message, since a common carrier cannot exempt himself for liability for his own negligence, while Act Cong. June 18, 1910, c. 309, 36 Stat. 539, renders a telegraph company a common carrier of interstate telegraphic message, the clause of the contract not even being an agreed valuation of

the message, made to obtain the lower of two rates.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 39–47; Dec. Dig. ☞54.]

**9. TELEGRAPHS AND TELEPHONES ☞54—DELAY IN DELIVERING A MESSAGE—EXEMPTION FROM LIABILITY.**

Where a telegraph company was guilty of gross negligence in delaying delivery of an interstate dispatch, the clause of the contract, subject to which the message was accepted, that the company should not be liable beyond the cost of transmission for delay in transmitting an unrepeated message was not effectual to bar the addressee's recovery, beyond such amount, for all damages sustained and recoverable under the rules of law.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 39–47; Dec. Dig. ☞54.]

Appeal from District Court, El Paso County; C. B. Hudspeth, Judge.

Action by D. W. Schoonmaker against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Geo. H. Fearons, of New York City, and Beall, Kemp & Nagle, of El Paso, for appellant. M. W. Stanton and Jno. F. Weeks, both of El Paso, for appellee.

WALTHALL, J. This suit was brought by appellee, D. W. Schoonmaker, for damages, actual and exemplary, which he alleged he had suffered by reason of the alleged failure on the part of appellant, Western Union Telegraph Company, to promptly deliver the following telegram, sent by J. W. Fleming, acting for and in behalf of his son, James C. Schoonmaker, from Silver City, N. M., to El Paso, Tex., said telegram being designed as a day message, and being in words and figures, following:

"May 25, 1915. Mr. Schoonmaker, c/o Mayor Kelly, El Paso, Texas. Your son Jim is very ill. Not expected to recover. [Signed] J. W. Fleming."

Appellee alleged that Fleming paid the agent 30 cents, the sum charged for sending said message; that appellant was charged with notice that appellee's son, James C. Schoonmaker, was very ill and not expected to recover, and that the agent of appellant at Silver City, instead of sending the message as written, intentionally, negligently, and carelessly changed the name of "Schoonmaker" to "Schoemaker"; that the message so changed was promptly transmitted and delivered to Mayor Kelly, but that by reason of the change in the name same was not promptly delivered by Mayor Kelly to appellee until the following morning, May 26th, at about 8 o'clock. Appellee alleged that after receiving the message he took the first train out of El Paso for Silver City, the train leaving El Paso at 4 p. m., of that day, and arrived at Deming, N. M., at about 6 o'clock p. m. of the same day; that appellee, on arriving at Deming, had his daughter telephone to Silver

City, and was advised by his son's doctor that it would be safe for him to remain in Deming overnight and take the train for Silver City the following day and thereby arrive at Silver City before his son would die, and that by reason of said advice, he remained at Deming during the night of May 26th. Appellee alleged that on the morning of May 27th, he received information by telephone from his son's doctor to come at once, and that he immediately obtained an automobile and made the distance of 53 miles from Deming to Silver City in 2 hours and 15 minutes, arriving in Silver City shortly after the death of his son. Appellee alleged that, had the said telegram been promptly delivered, he would have boarded one of the trains leaving El Paso at 10:05 p. m., on May 25th, or at 6:50 a. m., on May 26th, and would have connected with the train at Deming on the morning of May 26th, and would have arrived at Silver City at a cost of about $5 railroad fare and about 22 hours before his son's death, but that by said negligence of appellant he was required to pay $1.50 hotel bill in Deming and $15 for an automobile from Deming to Silver City, when the railroad fare would have been $1.90, and that his actual damages in consequence thereof were $14.90; that he suffered mental anguish and distress to the sum of $2,326.75. Appellee alleged that appellant was guilty of gross negligence and reckless conduct in failing to deliver said telegram as written, and thereby did so with intent to injure, harass, and annoy appellee, and that by reason thereof appellee suffered exemplary damages in the sum of $439.70, for all of which appellee sued and prayed judgment.

Appellant's answer contained exceptions, and specially to the items aggregating $14.90 and to the portion seeking to recover exemplary damages, and a denial of any negligence on its part, but admitted that the name of Schoonmaker in the telegram was changed by its agent at Silver City to Schoemaker, but denied that said change was made through negligence or any evil intent, and denied that it was guilty of any act of negligence, but alleged that appellee's failure to reach his son before his death was not due to any negligence on its part, but was caused by appellee's failure to proceed from Deming to Silver City on the afternoon or night of May 26th. Appellant further answered that under the laws of New Mexico, damages for mental anguish, unaccompanied by physical injury, are not recoverable, and were not recoverable at the time of sending said telegram, and that the contract under which said message was sent was governed by the laws of New Mexico. Other matters pleaded by defendant will be later set forth.

The court submitted the case to the jury upon special issues. The jury found:

"First. On May 25, 1913, J. W. Fleming delivered to the defendant company at Silver City, N. M., for transmission to the plaintiff at El Paso, Tex., the following telegram: 'May 25th, 1913, Mr. Schoonmaker, care of Mayor Kelly, El Paso, Texas. Your son Jim is very low, not expected to recover. [Signed] J. W. Fleming.'

"Second. That defendant company, at said time accepted said telegram for transmission and delivery and accepted from J. W. Fleming 30 cents in payment for such transmission and delivery of said telegram.

"Third. That defendant company's agent, who received said telegram at Silver City, changed the name of the addressee from 'Mr. Schoonmaker' to 'Mr. Schoemaker.'

"Fourth. The defendant company's said agent was guilty of negligence in so changing the name of the addressee.

"Fifth. There was undue delay in the delivery of said telegram to the plaintiff.

"Sixth. Such delay was proximately caused by the act of the defendant's agent, at Silver City, in altering said telegram.

"Seventh. Plaintiff did not exercise such care and diligence as an ordinarily prudent man in a like situation would have exercised in going from El Paso to Silver City, after he had received the message advising him of the illness of his son.

"Eighth. To exercise such care and diligence as an ordinarily prudent man in a like situation would have exercised, plaintiff should have left by automobile same evening of arrival at Deming.

"Ninth. Plaintiff has suffered actual damages, and the items of damage and the amount of each such item are: automobile, $15, less train fare, $1.90, $13.10; hotel, $1.50; message, 30 cents, total $14.90."

"Eleventh. We find for the plaintiff exemplary or punitive damages in the amount of $500.

"Twelfth. The law was not established in New Mexico, on the 25th, 26th, and 27th days of May, 1913, as to whether or not the plaintiff in this case could recover damages for mental anguish or suffering, when not accompanied by physical injury.

"Thirteenth. Under the laws of New Mexico, as they existed on the 25th, 26th, and 27th days of May, 1913, damages could not have been recovered for mental anguish unaccompanied by physical pain."

On motion of appellee, the court entered judgment in favor of appellee for $14.90 actual damages, and $500 exemplary damages. Appellant, in due time, filed a motion for a new trial. Appellee filed a remittitur of $1.50, the hotel bill item, of the actual damages and $61 of the exemplary damages awarded by the trial court. The motion for new trial was overruled, and appellant took its appeal and filed its supersedeas bond.

Appellant submits this case on 29 assignments of error. The first 9 assignments, in various ways, question appellee's right to recover exemplary damages under the pleadings, evidence, and facts found by the jury. We deem it unnecessary to discuss each of the assignments separately. In our opinion, several of the grounds assigned by appellant against the judgment for exemplary damages are well taken. Appellee's judgment for exemplary damages is based solely upon his allegation and proof that Fleming, acting for James C. Schoonmaker and his father, appellee, wrote and delivered to appellant's agent at Silver City, N. M., the telegram above stated, paying 30 cents, the charges for its delivery, and that appellant's agent changed the name of the addressee in the message from "Schoonmaker" to "Schoe-

maker," thereby confusing the name of the addressee and proximately resulting in the delay of its delivery to appellee. There is no allegation in appellee's pleading nor evidence in the record of any act of negligence committed by the defendant corporation, acting by or through any superior or managing officer of defendant company, or that the act of the company's agent at Silver City in changing the name of the addressee in the message had been previously authorized, and no allegation in the pleading of any subsequent ratification of the act of said agent in changing the name with knowledge of the fact that the name had been changed. The allegation of negligence and the proof offered had reference only to the act of the agent at Silver City in making the change in the name of the addressee as above indicated. The court, in the general charge to the jury, defined exemplary damages, and authorized the jury to award exemplary damages should the jury find from the evidence that appellant was grossly negligent in altering said telegram. In the seventh paragraph of the general charge, in submitting the issue of actual damage, the court uses this language:

"And for such further actual damages, if any, caused by mental anguish, if you find he suffered mental anguish, as will be reasonably commensurate with such suffering, if any, not to exceed in any event, as to any such item, the respective amounts prayed for by plaintiff in his petition."

Under the eleventh special issue submitted by the court the jury found and awarded exemplary damages in the sum of $500, of which appellee remitted $61.

[1, 2] The appellant, in various ways, made due and timely objections to the different parts of the general charge of the court, submitting the issue of exemplary damages as a part of the actual damages appellee might recover, and to the verdict of the jury in awarding exemplary damages, and embraced said objections in its motion for a new trial, and now ask a reversal of the case on the errors assigned. The jury found, under the evidence, that damages could not be recovered in New Mexico for mental anguish unaccompanied by physical pain. There was no allegation, evidence, or finding as to whether in New Mexico the defendant company could be held liable for exemplary damages for gross negligence of the agent of the company, where the act was not directed by the company or ratified or adopted as its own. In the absence of pleadings and findings on such facts, we must presume the law of New Mexico to be the same as our own. It has been the uniform holding in this state since the opinion of Judge Gould, rendered in Hays v. Railroad Co., 46 Tex. 272, .that to make the master liable in any case of exemplary damages for the fraud, malice, gross negligence, or oppression of the servant, it should be alleged and proved that the acts of the servant which constitute the fraud, malice, gross negligence, or oppression were committed by direction of the master, or that the master has ratified and adopted such act as his own, or that the master has been guilty of negligence in the selection and employment of the servant whose act constitute the fraud, malice, gross negligence, or oppression complained of. None of these facts are alleged. Western Union Tel. Co. v. Karr et al., 5 Tex. Civ. App. 60, 24 S. W. 302; Western Union Tel. Co. v. Landry, 108 S. W. 461; Tel. Co. v. Brown, 58 Tex. 170, 44 Am. Rep. 610; Railway Co. v. Cowser, 57 Tex. 306. The Supreme Court of this state in the last-named case said:

"Exemplary damages are allowed only for the willful act, omission, or gross negligence of the 'defendant' to the suit, if a corporation, for the willful act, omission, or gross negligence of one representing it in its corporate capacity, as a corporate officer, but not of a mere * * * servant or agent."

[3] Plaintiff's pleading on the issue of exemplary damages for gross negligence in not alleging that the act of the agent of the company in changing the name of the addressee in the message was directed by the company or ratified or adopted by the company as its act was not sufficient, as against a general demurrer, to authorize the submission of the issue of exemplary damages; nor are the necessary facts supplied by the answer of the defendant; nor does the verdict have the effect to cure the pleading. A verdict cures defects of form, but not of substance, in pleadings. T. & P. Ry. Co. v. McCoy, 3 Tex. Civ. App. 276, 22 S. W. 926. Appellee's counter propositions are not sustained. Appellee's assignments of error, complaining of errors in submitting and awarding exemplary damages, must be sustained.

[4] Appellant's eleventh assignment claims error in the action of the court in overruling its motion for new trial because the undisputed evidence shows that the message was promptly delivered to Mayor Kelly, in whose care it was sent, and that Mayor Kelly, without contradiction, testified that upon receipt of the message he suspected or thought it was for plaintiff, and that the delivery to Mayor Kelly constituted in law a delivery to plaintiff himself. A delivery to Mayor Kelly of the message delivered for transmission would be a delivery of it to the plaintiff. But the message as delivered to the defendant's agent at Silver City for transmission was never delivered to Mayor Kelly or to plaintiff. If the name of the addressee so delivered for transmission is so mutilated or changed that the party to whom it is addressed, or for whom it is intended, could not know for whom it was intended, because of the mutilation or change of name, we think there would be no delivery of the message.

[5] The mere fact that Mayor Kelly thought or supposed that the message might be intended for the plaintiff would not, in

our opinion, constitute a delivery of the message given the agent by Fleming. The jury found that change of the name of the plaintiff was negligence and the proximate cause of the delay in the delivery of the message to plaintiff, as transmitted, and we think the finding is amply sustained by the evidence. The eleventh assignment is overruled.

[6] We do not think the finding of the jury that the plaintiff was guilty of contributory negligence in not taking an automobile out of Deming for Silver City sooner than he did would relieve the defendant company of liability for the difference in the actual and necessary cost to plaintiff of reaching Silver City by train and by automobile, where the delay in the delivery of the message to plaintiff caused plaintiff to miss the train at Deming, as complained of in the thirteenth assignment. The evidence does not show that appellee could have gone by train from Deming to Silver City after reaching Deming and before he went to Silver City by automobile. We think the defendant company should be taxed with the difference in cost of the two methods of travel between Deming and Silver City, unless the difference in cost is excluded by a construction of the limitation clause on the back of the message, as hereinafter discussed. The assignment is considered and will be passed upon in connection with the subsequent assignments.

[7, 8] Defendants specially pleaded: That the telegraphic message was delivered to and accepted by it subject to the terms of a certain contract in writing, attached to its answer and marked "Exhibit A," which contract provided as follows:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages.

"2. In any event, the company shall not be liable for damages for any mistakes or delay in the transmission or delivery, or for the nondelivery of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this message is hereby valued, unless a greater value is stated in writing hereon at the time the message is offered to the company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one tenth of one per cent. thereof."

That it was a condition of the contract, as shown by the paragraphs quoted, that the defendant would not be liable for mistakes or delays in the transmission or delivery or for nondelivery of any unrepeated message beyond the amounts received for sending same. That said message was an unrepeated one and the sum of 30 cents was paid defendant for its transmission and delivery. That it was an interstate message to be sent from a point in the state of New Mexico to a point in Texas and was interstate commerce; that by the defendant's established rules, regulations, and tariffs, as same were in effect prior to June 18, 1910, and are still maintained and established, messages are classified into "repeated" and "unrepeated," a repeated message being a message which the defendant agreed that the office of destination shall transmit back to the point of origin, in order to avoid mistakes. That in the case of unrepeated messages, defendant assumes no liability beyond the amount received for sending same, while in the case of repeated messages, defendant does not undertake to limit its liability to the amount received for sending same, but assumes liability not to exceed fifty times the amount received for sending the message, except in so far as said liability may be further limited by other provisions of the contract, and that for the additional risk or liability assumed in the case of a repeated message, the defendant at all times mentioned has made, and still makes, an additional charge equal to one-half of the unrepeated message rate. That by an act of Congress, approved June 18, 1910 (36 Stat. L. 539) the Congress of the United States entered and assumed charge of regulating the field of interstate communications by telegraph, and thereby removed and exempted such interstate communication by telegraph from the field of state regulation or interference, and undertook and did confer upon the Interstate Commerce Commission full power over the rates, charges, facilities, classifications, and practices of telegraph companies engaged in interstate commerce with reference to such interstate commerce, and in particular conferred on the Interstate Commerce Commission power to approve, alter, or acquiesce in existing rates and classifications, which power the Interstate Commerce Commission has ever since retained and still retains. That the said Interstate Commerce Commission, prior to the filing of the message sued on, and prior to the commencement of this action, had full knowledge of the rates, charges, and classifications, established by the defendant as above described, and, with such knowledge, acquiesced in and approved the same, and did not, at any time, alter or seek to alter such rates, charges, classifications, or regulations, and thereby recognized the right of the defendant to charge a higher rate for a greater liability and a lower rate for a less liability, as above described. By reason of which, and of all the premises, the defendant says that the stipulation in the contract, subject to which this message was accepted, to

the effect that the defendant's liability should not, in any event, exceed the sum of 30 cents, was reasonable and valid and binding on the plaintiff herein, and free from any regulation or control on the part of the state of Texas, or any other state, so that the defendant ought not to be liable, in any event, in this action beyond the sum of 30 cents, with interest from the date of said message.

Defendant further says that, as more fully appears by said Exhibit A, it was a term and condition of the said contract, subject to which, and subject to which only, the said message was accepted by the defendant that the defendant should not be liable for mistakes or delays in the transmission or delivery or for nondelivery of a message, whether caused by the negligence of its servants or otherwise, beyond the sum of $50, at which amount the said message was valued by the sender thereof. That by the defendant's established rules, regulations and tariffs, as the same were in effect prior to June 18, 1910, and are still maintained and established, messages are classified, among other classifications, into messages valued by the senders thereof at $50 and messages valued by the senders thereof at some specified sum in excess of $50. That all defendant's ordinary rates and tariffs for the transmission and delivery of messages are based on the assumption that the message is valued at $50 or less, and that in the case of a message valued at a specified sum in excess of $50, it was, at all the times mentioned and still is, the rule, regulation, tariff, and practice of the defendant to charge and collect an additional sum to cover the increased risk of liability, which additional sum is based on the valuation and is equal to one-tenth of one per cent. thereof. By reason of which and of all the premises, defendant says that, if liable at all, it ought not to be liable to the plaintiff in this action, in any event, beyond the sum of $50, with interest from the date of said message. That the damages classified on account of mental anguish or suffering are not recoverable in this suit.

Plaintiff excepted to the foregoing portions of defendant's answer, and the exceptions were sustained by the court, and the correctness of its action in so doing is challenged by a number of assignments of error.

In view of the disposition made of the item of exemplary damages allowed in the judgment of the lower court and of the fact that the actual damages allowed amounts to only $14.90, it becomes unimportant to determine whether or not the second paragraph of the contract in question is valid or not. Such second paragraph limits the amount of recovery to the sum of $50, and the actual damage allowed is far less than that. So it remains only to be determined whether or not, under the first paragraph of the contract, liability of the company is limited to the sum of 30 cents, that being the price paid for its transmission and delivery and the message being an unrepeated one. In support of its various assignments of error upon this phase of the case, appellant urges that by an act of Congress, approved June 18, 1910 (36 Stat. L. 539) the federal government has entered the field and taken control of interstate communications by telegraph, and in the transmission of interstate messages the telegraph company has the right, in consideration of sending a message at a reduced rate, to limit its liability even against its own negligence. In this view we do not concur, and since there was negligence upon the part of the company in the transmission of the message, the clause in question will not operate to limit its liability to the sum received for sending same.

Appellant, in support of its position refers us to the following authorities: M., K. & T. Ry. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Railway Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; B. & M. R. R. Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; A., T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; Act of Congress approved June 18, 1910 (36 Stat. L. 539); Western Union Tel. Co. v. Brown, 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457; Western Union Tel. Co. v. Bilisoly, 116 Va. 562, 82 S. E. 91; Western Union Tel. Co. v. Compton, 114 Ark. 193, 169 S. W. 946; Western Union Tel. Co. v. Johnson (Ark.) 171 S. W. 859. But we are of opinion it can be demonstrated that the authorities cited do not support the position taken.

It may be conceded, under the authority of Western Union Tel. Co. v. Brown and the Virginia and Arkansas cases cited above, that in determining the liability of the defendant for its negligence in the transmission of the message, we are controlled by federal law upon the subject. That is to say, by the act of Congress of June 18, 1910, Congress has undertaken the regulation of interstate telegraphic communication, and the validity of the limitation upon the defendant's liability by the clause in the contract noted is a federal question, to be determined under the general common law, as declared by the United States Supreme Court, and as such the question is withdrawn from the field of state law or legislation.

It is the well-settled rule that a common carrier cannot exempt himself from liability for his own negligence or that of his servants. Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and cases there cited. And by the act of June 18, 1910, it is declared that the defendant shall be considered and held to be a common carrier. It follows therefore that it cannot exempt itself from liability for its own negligence or that of its servants.

The cases of Railway Co. v. Harriman, Adams Exp. Co. v. Croninger, and Railway Co. v. Carl, supra, expressly repudiate the idea that a common carrier may exempt itself from such liability. They simply hold that such carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges, proportioned to the amount of risk, and that such a limitation so made is not an exemption from liability for negligence.

Conceding for the sake of argument that a telegraphic message may properly be valued by the parties and the amount recoverable in case of breach of the contract limited to such agreed value, in a case where such valuation was made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk, yet the clause considered can, in no sense, be regarded as an agreed valuation of the message. The second paragraph of the contract does undertake to make an agreed valuation, but the first does not. The first simply undertakes to limit the amount of recovery to the price paid for its transmission, and is in effect an exemption from the consequences of its negligence by releasing all damages incurred in excess of the price so paid. It may be conceded that the classification of the message affords a basis for a distinction in the rate, and that the limitation is thus supported by a consideration, and it may be further conceded that the clause does not undertake to wholly release the damages sustained, but:

"An agreement to release such a carrier for part of a loss due to negligence is no more valid than one whereby there is complete exemption. Neither is such a contract any more valid because it rests upon a consideration than if it was without consideration." Railway Co. v. Carl, supra.

The verdict of the jury establishing negligence upon part of defendant, the first clause of the contract will not protect it from liability for the full amount of the damages properly allowable in such cases.

[9] What has been said is from the viewpoint that ordinary negligence only is chargeable against the defendant. The fourth finding establishes such negligence. But there is another aspect of the case, which forecloses appellant's contention that the clause in question limits its liability to the price paid for its transmission. The court, in its charge to the jury, defined the term "gross negligence," and instructed the jury that they would not allow any exemplary damages unless the defendant was guilty of gross negligence in altering the message so filed or in not promptly delivering the same. In response to the eleventh issue, the jury allowed exemplary damages in sum of $500. This necessarily implies a finding of gross neg-

ligence upon the appellant's part. In such a case the clause in question will not protect defendants from the full consequences of such negligence, and it is liable for all the damages sustained and recoverable under the rules of law; it is so held in the federal courts and other jurisdictions where the validity of such a clause has been upheld. Primrose v. Western Union Tel. Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883; Postal Tel. Co. v. Nichols, 159 Fed. 643, 89 C. C. A. 585, 16 L. R. A. (N. S.) 870, 14 Ann. Cas. 369; Weld v. Tel. Co., 199 N. Y. 88, 92 N. E. 415; s. c., 210 N. Y. 59, 103 N. E. 957; Wheelock v. Tel. Co., 197 Mass. 119, 83 N. E. 313, 14 Ann. Cas. 188; Tel. Co. v. Gildersleve, 29 Md. 232, 96 Am. Dec. 519; Halsted v. Tel. Co., 193 N. Y. 293, 85 N. E. 1078, 19 L. R. A. (N. S.) 1021, 127 Am. St. Rep. 952.

So, under any view of the case, it follows that the stipulation in question will not protect defendant. We express no opinion as to the validity of the second stipulation, which undertakes to value the message at $50 and limit liability to that amount.

The judgment of the trial court will be reversed, and here rendered in appellee's favor for the sum of $14.90 actual damages, less the hotel bill of $1.50, which was remitted in the court below.

Reversed and rendered.